**In re Eidsell Carlon OBENSHAIN, Hilda Cardenas Obenshain, Debtors.**

**Dolores Faye OBENSHAIN, Plaintiff,**

**v.**

**Eidsell Carlon OBENSHAIN, Defendant.**

**Bankruptcy No. 7–80–01215.
Adv. No. 7–80–0289.**

United States Bankruptcy Court,
W. D. Virginia,
Roanoke Division.

June 17, 1981.

Gary L. Lumsden, Roanoke, Va., for plaintiff.

Jennifer Mulligan, Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue in this case involves the construction and application of Texas community property law in the context of 11 U.S.C. § 523(a)(5)(B) which reads:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . ."

Specifically, the question is whether an amount awarded a wife in a Texas court decree entitled "Property Settlement and Support Agreement" is a dischargeable obligation as a division of spousal property or whether the obligation is a nondischargeable debt in the nature of alimony.

The facts were largely stipulated by the parties and are as follows:

On October 24, 1980, the Debtors herein, Eidsell C. Obenshain and his present wife Hilda C. Obenshain filed a petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Reform Act of 1978. In their petition was listed $53,281.00 secured debt and $155,708.00 in general unsecured debt as against $31,277.00 in listed assets. In the petition the Debtors listed a debt due Mrs. Dolores Faye Obenshain for child support and property settlement in the amount of $20,000.00 and a $120,000.00 amount due her for a property settlement in accordance with a separation agreement.

After the § 341 meeting of creditors had been held and a trustee appointed, the Plaintiff, Dolores Faye Obenshain filed an adversary proceeding on December 16, 1980 objecting to the discharge of the debt owed her. On April 13, 1981 a hearing was held in which the only witnesses testifying were Dolores Faye Obenshain, Plaintiff herein, and Eidsell Carlon Obenshain, Defendant-Debtor herein, counsel for the parties requested and were granted leave to file briefs which they have done and this case is ready for decision.

Plaintiff and Defendant were married in Virginia in 1954 and during the ensuring 18 years, 5 children were born of the marriage. Mr. Obenshain, Debtor, was a career Air Force person, accruing during his stint in the Armed Forces certain retirement pension property rights. On March 20, 1973 the parties having lived apart, entered into a Property Settlement and Support Agreement in an effort to dissolve the issues of property division and support.

According to the terms of the document entitled "Property Settlement and Support Agreement," entered into evidence as Plaintiff's Exhibit No. 1, Plaintiff was to obtain custody of all 5 children and Defendant was to provide support and maintenance for the minor children in the amount of $250.00 per month. In addition, Plaintiff was to retain the family house and make the mortgage payments and continue to own and use a 1972 automobile, upon which only 8 payments had been made.

The relevant Clause V which is at issue before this Court reads as follows:

Husband and wife agree that the husband shall pay to the wife the sum of $150.00 per month commencing on the 15th day of the month immediately following the granting of this divorce, and continue such payments to wife in like amounts on the 15th day of each month thereafter. It is understood that said amount is the wife's portion of the community property interest which has been built up in the retirement pay which the husband is receiving from the United States Armed Forces, and this is made a part and parcel of the division of the community property in said retirement pay.

Upon a final decree of divorce dated May 7, 1973, the original Property Settlement and Support Agreement was incorporated therein by reference. All of these proceedings took place in Bexar County, Texas and were accordingly governed by the community property laws of that State; thus, the question of dischargeability of a support obligation in a U. S. Bankruptcy Court is governed by the laws of the State of Texas.

At the trial upon evidence adduced, it appeared that Plaintiff had followed her husband from place to place in connection with his military obligations; that she had lived with him for 18½ of the 22 years he had been in the Air Force; that she had limited post-secondary education, owing she testified, to the fact that she was busy raising 5 children and because as she travelled with her husband from place to place,

she was never situated in any one place long enough to complete formal training in any one area; that at the time of the separation agreement, she could have made $800.00 per month if she were able to work 40 hours per week which she testified she found impossible to do; and that her total education consisted of one semester at Roanoke College and a noncompleted course in nurse's training.

It further appeared that the parties signed the agreement, although the Defendant asserted incredulously that he signed the document without knowledge or understanding of its contents nor for that matter agreement with its contents. The Defendant admitted that he was to be obligated to pay child support according to terms of the agreement but denied that he was either morally or legally obligated to pay spousal support.

The issue then is framed as follows: May the Debtor-husband discharge a consensual obligation for spousal support arising out of a Texas divorce decree?

### CONCLUSIONS OF LAW

The validity of the Agreement and Divorce Decree is not doubted; both parties signed voluntarily, freely and with understanding of its contents. The Divorce Decree had incorporated within and by its terms the Property Settlement and Support Agreement and which was made a vital part thereof.

■ This Court finds that Clause V, reprinted above, sets forth an obligation which, though not designated alimony in form, is in substance in the nature of spousal support and is therefore nondischargeable.

The parties have stipulated that the law of Texas, and not the law of Virginia, applies because the communal domicile was in Texas and the separation and divorce were in Texas.

In Texas, unlike Virginia, the highest court there, the Texas Supreme Court has held in *United States v. Stelter*, 567 S.W.2d 797, 798 (Tex.1978) that "alimony after di-

vorce, as such, is not permitted in Texas." The language "as such" is important for our purposes because it opens the door for another meaning to be ascribed the term alimony. In fact, in the *Stelter* decision, the court explicitly recognized the Fifth Circuit's ruling in *In re Nunnally*, 506 F.2d 1024 (1975) where the court held that a property division may be a substitute for alimony and hence be nondischargeable in bankruptcy. Stating that "... we should not be bound by the label which the state places as a decree; we must look to its substance," 506 F.2d 1024, 1027, the federal appellate court held that in that case the divorce award fell within the exception to discharge contained in former Bankruptcy Act Section 17, the predecessor statute to § 523(a)(5)(B).

■ It is generally recognized "that a property settlement agreement between spouses is dischargeable in bankruptcy, at least where it is truly substantially a property agreement, and not an agreement for alimony, support, or maintenance." *Annot.* 74 ALR2d 758 (1960). Therefore, even under the *Nunnally* rationale when a divorced spouse asserts that a claim has or has not been discharged in bankruptcy, the order of the state divorce court must be examined to determine whether the judgment comprises solely a property division or also includes an obligation of support. *Harbour v. Harbour*, 590 S.W.2d 828 (Tex.Civ.App.1979) citing *In re Smith*, 436 F.Supp. 469 (N.D.Ga.1977). In *Harbour*, the Texas court considered *Nunnally, supra*, but declined to follow its lead, distinguishing the case factually; in *Nunnally*, the issue arose as an appeal of the decision of a bankruptcy judge, while in *Harbour*, the bankruptcy court's decree was unchallenged for over six years prior to the institution of the discovery proceedings. We find the distinction difficult to acknowledge, though admittedly we are without sufficient facts relative to the circumstances there presented. For whatever reason unknown to readers of the *Harbour* decision, the appellant wife did not challenge the dischargeability of the divorce court judgment when the bankrupt husband was

within the bankruptcy court's jurisdiction. The *Harbour* court at 830 gratuitously opined: "Had the appellant contested the dischargeability · of the judgment in the bankruptcy court in 1972, she would have had the burden of proving that the $25,-000.00 debt was an obligation in the nature of alimony, support, or maintenance." See Bankruptcy Rule 407. Unlike the¹ Plaintiff here, the wife in *Harbour* did not meet her burden. Importantly, the court there noted that there was nothing in the record other than the March 17, 1972 divorce decree that is evidentiary on the issue, and that decree ". . . indicates clearly that the

> . . . judgment was an integral part of the division of the community estate of the parties. *Nothing therein smacks of alimony.*" *Harbour, supra* at 830.

The court almost cavalierly uses the phrase, "smacks of alimony" as if to indicate that had there been any language in the decree itself which did in fact "smack of alimony", the decision would have been for the appellant wife. As it were, no evidence sufficient to prove her case, the court ruled that the Texas trial court did not err in sustaining appellee-husband's motion and in holding the $25,000.00 debt to be discharged in bankruptcy.

Turning now to the pivotal case law authority, *In re Nunnally, supra*, it is noted at the outset that in that decision the Fifth Circuit considered whether the law of Texas allowed for an alimony substitute where the Texas statutes themselves expressly forbid the granting of spousal support. In *Nunnally*, the wife had been awarded 48% of her husband's Navy retirement benefits in accordance with a divorce decree. Pursuant to the terms of the decree, the award was to be in a lump sum, rather than monthly installments. Sometime afterwards, the husband filed bankruptcy, listed his former wife as a creditor and sought to discharge his obligation to her. The Bankruptcy Judge found that "the bankrupt's navy retirement benefits becoming due after the filing of the voluntary petition were not property passing to the trustee in bankruptcy and that an award to bankrupt's

former wife during their divorce proceedings was a dischargeable debt." *Nunnally, id.* at 1025. The United States District Court for the Western District of Texas affirmed, holding the debt dischargeable. The wife appealed to the Fifth Circuit Court of Appeals which reversed the lower courts, holding the obligations to be nondischargeable owing in part that ". . . . what may appear to be a mere division of assets may in fact, under a Texas decree, contain a substantial element of alimony-substitute support or maintenance, however termed." *Id.* at 1027. Recognizing that Texas courts would not allow alimony *per se*, the court nevertheless decided ". . . . we should not be bound by the label which the state places on a decree; we must look to its substance." *Id.*

In so holding, the Fifth Circuit based its decision on *Texas Family Code Ann.* § 3.63, where it is mandated:

> "In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage."

The Court elaborated on a liberal interpretation tact:

> "Factors which the Texas Courts may take into account in making the division and award "include the disparity of the *earning power* of the parties, as well as their business opportunities, . . . the physical condition of the parties, probable *future need for support*, and educational background; . . . [t]he fault in breaking up the marriage and the benefits innocent spouse would have received from a *continuation* of the marriage . . . ." *Cooper v. Cooper*, 513 S.W.2d 229, 233–234 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ history unknown) (emphasis added). See also *Keton v. Clark*, 67 S.W.2d 437 (Tex.Civ.App.—Waco 1933, writ ref'd)."

*Nunnally*, at 1026.

In perhaps the most compelling language in the entire opinion, which sheds considera-

ble light on the case at hand, the Court noted:

> Bankrupt contends that we cannot find the $41,779.41 an award for support since it would then be void under Texas law as permanent alimony. In order for the order to be valid, he says, we must find a debt a dischargeable one. Although it is doubtful that this is a proper forum for bankrupt to attack the divorce decree collaterally, bankrupt's argument founders on Texas case law. In Texas, permanent alimony is defined as "those payments imposed by a court order or decree on the husband as a personal obligation for support and sustenance of the wife after a final decree of divorce." *Francis v. Francis*, 412 S.W.2d 29, 33 (Tex.1967). However, Texas courts are not quick to find that permanent alimony has been ordered, and we are *Erie*-bound to follow in their tracks. If the payments ordered are "referable to any property which either spouse may have owned or claimed," the award is valid. *McBean v. McBean*, 371 S.W.2d 930, 932 (Tex.Civ.App.—Waco 1963, writ history unknown). In *McBean*, the Waco Court of Civil Appeals held that requiring the husband to pay $100.00 per month to the wife for her life or until she remarried was valid as an offset against the community property awarded the husband. *See also Zaruba v. Zaruba*, 498 S.W.2d 695, 700 (Tex.Civ.App.—Corpus Christi 1973, writ dism'd); *Gent v. Gmenier*, 435 S.W.2d 293 (Tex.Civ.App.—Waco 1968, no writ); *Bunker v. Bunker*, 336 S.W.2d 751 (Tex.Civ.App.—San Antonio 1960, writ dism'd). The divorce court here stated specifically that Mrs. Nunnally was entitled to restoration of her separate *property*—$41,779.41. The sum was fixed: no periodic payments for an indefinite period of time were ordered. Mr. Nunnally received, among other items, 52% of his Navy retirement benefits. These benefits were valued at $222,000 in the voluntary petition for bankruptcy, so it is clear that there was property on hand, in Texas divorce court terms, to satisfy the debt. The cash award was made in lieu of granting Mrs. Nunnally additional property in kind. We do not think that the divorce decree suffers from the infirmity bankrupt presses upon us.

*Nunnally*, at p. 1027, fn. 6.

In view of the *Nunnally* rationale, there is no doubt that the Debtor's obligation under Clause V of the Separation Agreement as incorporated within the Divorce Decree signed by both parties is nondischargeable because it is in the nature of, or "smacks of" alimony. Taking into consideration the tenets outlined in *Nunnally* and outlined and emphasized above, that the wife's financial situation should be reviewed, and finding that she was left with five children on $250.00 per month, a paltry sum even in 1973, that she had little formal education or training, that she had car and mortgage payments to make, and that, had she remained married she would have been entitled to share in these certain military retirement benefits, indubitably demonstrate that the agreement purported to have the husband support the wife and that obligation, as such, is nondischargeable.

Accordingly, it is

### ADJUDGED AND ORDERED

that the Plaintiff had judgment against the Defendant in the sum of $13,650.00 spousal support arrearage and $5,190.00 child support arrearage, the same being nondischargeable with interest thereon at the rate of 8% per annum from this date until paid.