**In re Robert F. SINGER, Debtor.**

**Lethia A. SINGER, Plaintiff,**

**v.**

**Robert F. SINGER, et al., Defendants.**

**Bankruptcy No. 2–81–02700.
Adv. No. 2–81–0422.**

United States Bankruptcy Court,
S. D. Ohio, E. D.

Feb. 12, 1982.

Milton A. Puckett, Columbus, Ohio, for plaintiff.

Alphonse P. Cincione, Columbus, Ohio, for defendant, Robert F. Singer.

Roland T. Gilbert, Columbus, Ohio, for defendant, BancOhio Nat. Bank.

Frederick M. Luper, Columbus, Ohio, Trustee.

## OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

R. J. SIDMAN, Bankruptcy Judge.

On July 10, 1981, Robert F. Singer filed a voluntary petition in this Court under the provisions of Chapter 7 of the Bankruptcy Code. Among his listed creditors was Lethia A. Singer, his ex-spouse, for an amount of $47,200.00, representing the balance owed under a separation agreement previously entered into by the Singers. Lethia Singer has filed a complaint requesting that this Court declare that this debt is not dischargeable under the provisions of § 523(a)(5) of the Bankruptcy Code because it is a debt for or in the nature of alimony, maintenance or support of a former spouse. Lethia Singer had also requested denial of Robert Singer's discharge under the provisions of § 727(a)(2)(e), but has subsequently abandoned pursuit of that remedy. Lethia Singer has also apparently abandoned any claim for relief she may have had against BancOhio National Bank, a defendant named in her original complaint. This case was tried to the Court on its merits, and the Court makes the following findings of fact.

Robert and Lethia Singer were married in Columbus, Ohio, on January 8, 1970. The marriage was terminated by an entry of the Court of Common Pleas of Franklin County, Ohio, on July 26, 1978, which entry dissolved the marriage of the parties by consent and incorporated a previously executed separation agreement signed by Lethia and Robert Singer. There were no children of the marriage.

Pursuant to the separation agreement which was signed on June 6, 1978, (and which was subsequently incorporated into the decree of dissolution), Lethia and Robert Singer purported to settle all questions of property rights, maintenance, alimony, dower, descent, distribution, and all other rights or claims that may have arisen or accrued by virtue of their marriage. In pursuit of this objective, Robert Singer agreed to pay to Lethia Singer the sum of Eight Hundred Dollars ($800.00) per month for a total of sixty (60) months, and thereafter the sum of Four Hundred Dollars ($400.00) per month for the following sixty (60) months "as a full and complete settlement of all property claims of the wife." In order to secure payment of that amount in the event Robert Singer died before the entire amount was paid, Robert Singer agreed to maintain a life insurance policy in the amount of Forty Thousand Dollars ($40,000.00) until the terms of the separation agreement were completed, and the parties additionally agreed that any amounts unpaid over and above the $40,000.00 proceeds of the life insurance policy would constitute a claim against the estate of Robert Singer. Further, in the event Lethia Singer died prior to the payment of the entire amount due during the ten (10) year period, the balance was due and payable to her estate. In addition to these periodic payments, the marriage residence was granted to Lethia Singer, Robert Singer relinquished any claims to household furniture and appliances, Robert Singer was to provide Lethia Singer with an automobile and provide certain insurance coverage and gasoline for the operation of the automobile, pay the attorneys' fees of Lethia Singer, and pay her hospitalization, all during the course of a ten (10) year period as provided for in the separation agreement. Lethia Singer released any and all interest she may have had in the business of Robert Singer, then known as Bob Singer Ford, Inc. and Bob Singer Leasing.

Robert Singer made the periodic payments called for in the separation agreement from the date of its execution through the payment due in January, 1981. He has failed to make payments since that time, and the amount owed for the periodic payments due under the agreement from February, 1981, to conclusion is Forty-Sev-

en Thousand Two Hundred Dollars ($47,-200.00). There may be other defaults under the terms of the separation agreement, specifically the failure of Robert Singer to provide an automobile, gasoline and insurance, but those defaults are not directly relevant to the issues in this case and to the relief sought by Lethia Singer. It should be noted that when Robert Singer and Lethia Singer separated in the fall of 1977, Robert Singer provided Lethia Singer with a $200.00 per week payment from that time up to the time of the execution of the separation agreement. In that regard, the separation agreement largely continued that payment for the ensuing five (5) years.

Lethia Singer, at the time of the dissolution of her marriage to Robert Singer, was sixty (60) years of age. She was fully qualified, given the attainment of the statutory minimum age, for receipt of Social Security benefits by virtue of her previous employment. Such benefits could have been taken at age 62 at a reduced level, or at age 65 at a maximum level. Lethia Singer did not work to any significant degree outside the home during the course of her marriage to Robert Singer, apparently because of a lack of a need to work and also because of some health problems. She had had lengthy work experience outside the home prior to her marriage to Robert Singer, although it appears that her earning capacity was significantly lower than the earning capacity, and actual earnings, of Robert Singer during the course of their marriage. Federal income tax returns for the years 1975, 1976, and 1977, as filed jointly by Robert and Lethia Singer, and 1978 as filed individually by Robert Singer, reveal adjusted gross income of $70,347.44, $27,507.72, $35,490.54, and $118,832.98, respectively. None of this income appears to have been earned by Lethia Singer.

. This Court is asked to find that the sum of Forty-seven Thousand Two Hundred Dollars ($47,200.00) (a portion of which is owed by virtue of non-payment of $800.00 installments from February of 1981, and the remainder to become due during the remaining term of the separation agreement) is a nondischargeable debt under the relevant provisions of § 523(a)(5) of the Bankruptcy Code.

"§ 523. *Exceptions to discharge*

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; ..." 11 U.S.C. § 523(a)(5)(B).

The legislative history of this particular section of the Bankruptcy Code makes it clear that what constitutes alimony, maintenance or support will be determined under the bankruptcy laws, not state law. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977) and S.Rep.No.989, 95th Cong., 2d Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. This Court is called upon to decide the question as to whether or not the periodic payments called for in the separation agreement between Lethia and Robert Singer are in the nature of alimony, maintenance, or support of a former spouse, and thus nondischargeable under the provisions of § 523(a)(5) of the Bankruptcy Code, or whether such payments are in the nature of a property settlement and thus dischargeable. While the intrusion of federal courts into the area of domestic relations law has been historically limited, the economic aspects of domestic relations clearly come into play in a bankruptcy case and call for the intervention of the bankruptcy court to pass upon the dischargeability of marital-related obligations. . See *Ridgway v. Ridgway*, —— U.S. ——, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981).

It is clear that congressional intent on the question of the alimony/property settlement dichotomy was to permit, and even mandate, that the Bankruptcy Court look behind the designation assigned by a state court, or by the parties themselves, as to whether or not a particular obligation was in the nature of alimony, or a property settlement, and to determine the true nature of such an obligation. In other words, it is not what the obligation is labeled that is significant, but what the obligation actually is. While that proposition may be easily stated, its application to the present circumstances is somewhat more difficult.

The face of the separation agreement seems, in many respects, to clearly designate the periodic payments due under its terms as a property settlement. Paragraph 3 of the agreement states that such payments are "as a full and complete settlement of all *property claims* of the wife." Paragraph 15 of the agreement clearly states that "This Agreement shall be a full and complete settlement of all *property rights* between the parties, each of whom does, by the provisions herein, release, satisfy and discharge all claims and demands against the other party, including all rights of dower, *alimony*, . . ." Additional factors supporting the characterization of the periodic payments as a property settlement include the failure of Lethia Singer to include such payments as taxable income on her federal tax returns for the years 1978, 1979, 1980, or 1981. Concomitantly, Robert Singer did not deduct such payments as "alimony paid" in those same years. See, generally, *Crouser v. CIR*, 668 F.2d 239 (6th Cir. 1981) for the federal tax rules applicable. Further, the total of payments due under the terms of the separation agreement was to be made irrespective of the death or remarriage of either party, with a specific provision that Robert Singer was to maintain a $40,000.00 life insurance policy on his life to at least partially secure that the periodic payments called for by the separation agreement would be satisfied in the event of Robert Singer's death, and the specific provision that any unpaid amounts would constitute a claim against Robert Singer's estate. In the event Lethia Singer were to decease before completion of the periodic payments, Robert Singer specifically was obligated to make the payments to her estate. Finally, the amount to be paid under the separation agreement at least approximates a division of the property of the parties as valued at the time of the separation agreement. See Plaintiff's Exhibit 7.

On the other hand, and as testified to by Lethia Singer, the payments due under the provisions of the separation agreement were clearly intended and actually used for her maintenance and support. Even before the execution of the separation agreement, and presumably in recognition that Lethia Singer needed money to support herself, Robert Singer paid Lethia Singer $200.00 per week from the time he left the marital home in the fall of 1977 to June of 1978 when the separation agreement was executed. This $200.00 amount was apparently a continuation of the "allowance" which Lethia Singer received during the marriage and with which she paid household expenses (mortgage payments, food, utilities, etc.) for herself and her husband. She was not working at the time of the separation agreement, and her only source of income at that time was to be payments to be received under the separation agreement. Additionally, as evidenced by her age at the time of the separation agreement, she needed such payments in order to support herself until the full vesting of her Social Security benefits at the age of 65—thus the reason for the reduced payments in the second five years under the separation agreement. What Lethia Singer planned to do for additional support at the age of 70 when the reduced payments under the separation agreement were to terminate remains unexplained in this record. She apparently planned to rely solely on Social Security. Lethia Singer, it should be observed, has sold the marital residence she received in the separation agreement and has purchased, for cash, another home in which she now resides.

These facts provide the framework for deciding this difficult issue. While, as noted above, many indicia of a property settlement are present in this case, the charge of the Bankruptcy Code to look behind the form of the agreement substantially clouds what otherwise may appear to be a clear-cut result. For instance, one bankruptcy court decided that, in spite of the designation by the parties that "[t]his payment is a property settlement" and that "[the wife] has waived and she is hereby forever barred from alimony", the obligation would be nondischargeable as in the nature of alimony. *Carrigg v. Carrigg (In re Carrigg)*, 14 B.R. 658, 8 B.C.D. 330 (Bkrtcy.D.S.C.1981).

While Ohio law may have been relevant, or even binding, on the alimony/property settlement issue prior to the enactment of the Bankruptcy Code, as noted above, the bankruptcy court is now to make the decision independent of state law. See *Diers v. Diers (In re Diers)*, 7 B.R. 18 (Bkrtcy.S.D. Ohio 1980). In this Court's opinion, most payments to an ex-spouse emanating from a separation agreement or a divorce decree are in the nature of alimony, maintenance or support for such ex-spouse (or are in lieu thereof). Many reported cases substantiate this conclusion. See, for example, *Richter v. Pelikant (In re Pelikant)*, 5 B.R. 404 (Bkrtcy.N.D.Ill.1980) (payment for ex-wife's attorney fees); *Henry v. Henry (In re Henry)*, 5 B.R. 342, 2 C.B.C.2d 726 (Bkrtcy.M.D. Fla.1980) (second mortgage payments on the marital home); *Obenshain v. Obenshain (In re Obenshain)*, 11 B.R. 904, 4 C.B.C.2d 948 (Bkrtcy.W.D.Va.1981) (property settlement agreement, payable in installments out of military retirement benefits, held to be alimony). See also *Stranathan v. Stowell*, 15 B.R. 223, 8 B.C.D. 472 (Bkrtcy.D. Neb.1981).

This Court finds that there is an underlying duty of spouse support imposed by state law upon the marital parties. This duty, as noted in the state statute, is satisfiable in real or personal property, or both, or by payment of a sum of money either in gross or in installments. § 3105.18(A), O.R.C. The existence of this duty provides the foundation for this Court's analysis as to the nature of the payments called for in the separation agreement. *Warner v. Warner (In re Warner)*, 5 B.R. 434 at 440 (Bkrtcy.D. Utah 1980).

Simply stated, alimony is merely an allowance (either agreed to by the parties or imposed by a court) meant to provide for the maintenance and support of a spouse. The existence of the duty to support, as noted above, would have, in this Court's opinion, mandated some award of alimony to Lethia Singer by the state court had it been called upon to decide the alimony question under the applicable standards set forth in § 3105.18 of the Ohio Revised Code. It is clear that Lethia Singer would have merited some award of alimony by virtue of her relatively low earning capacity, her age and health, and perhaps the living standard established by the parties during the marriage. Robert Singer has failed to neutralize the obvious disparity of income of the parties during the marriage and thus has failed to avoid consideration of an important factor on the allowance of alimony by a domestic relations court in Ohio. § 3105.-18(B)(1), O.R.C. This is not to deny that Lethia Singer might not also have merited a property settlement award (the most obvious example being the marital home which was purchased with a combination of funds which she received upon a sale of her premarital residence and a jointly executed mortgage loan—a loan which remained upon the residence when it was deeded to her). Instead of allowing a court to set any alimony award or divide the marital property, however, the parties chose to agree to the appropriate financial settlement. The subsequent financial failure of Robert Singer's business does not affect the narrow question before this Court, that is, the nature of the periodic payments agreed to by the parties in the separation agreement. This Court makes no finding as to the right or ability of either party to seek modification of their agreement through other legal proceedings in light of subsequent changed circumstances. The fact that the parties agreed to the amount of periodic payments to be made (and, in fact, called the pay-

ments something other than alimony) does not foreclose a finding by this Court that the payments were to be in the nature of alimony. The Court hereby finds that the payments were, in fact, in satisfaction of the obligation of spousal support imposed by statute.

Property division may be nondischargeable when it is a substitute for alimony. *In re Obenshain, supra,* 11 B.R. 904, 4 C.B.C.2d at 951. This Court finds that the periodic payments due under the terms of the separation agreement are in the nature of alimony and thus nondischargeable under the provisions of § 523(a)(5) of the Bankruptcy Code. The fact that such payments may also bear some attributes normally associated with a property settlement has been fully considered by the Court. However, it is clear that the payments were and are clearly necessary to the support of Lethia Singer, and the balance between the fresh start concept of the bankruptcy laws and the "imperatives of domestic support" (*In re Warner, supra,* 5 B.R. at 442) is properly struck in this case in favor of domestic support. Clear congressional intent was to protect those persons who rely upon such support, and that intent in this case translates into the present finding of nondischargeability.

Based upon the foregoing, the Court hereby determines that the relief requested in the complaint in this case should be granted. A finding of nondischargeability is hereby entered for those unpaid periodic payments due or to become due under the terms of the separation agreement dated June 6, 1978, such payments being at the rate of $800.00 per month for a total of sixty (60) months and thereafter at the rate of $400.00 per month for the following sixty (60) months. The Court hereby declines an award of costs or attorney fees. Judgment will enter accordingly.

IT IS SO ORDERED.