In re Joe M. SKAGGS, Debtor.

Lena M. SKAGGS, Plaintiff,

v.

Joe M. SKAGGS, Defendant.

Bankruptcy No. 2–87–01683.
Adv.Pro. No. 2–87–0213.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Sept. 19, 1988.

Robert H. Farber, Jr., Columbus, Ohio, for debtors.

F. Richard Heath, Hite & Heath, Utica, Ohio, for Cambridge PCA.

Frank M. Pees, Worthington, Ohio, for Chapter 13 trustee.

Michelle T. Sutter, Baker & Hostetler, Columbus, Ohio, for trustee.

Charles M. Caldwell, Columbus, Ohio, Asst. U.S. trustee.

Jon M. Cope, Moots, Cope & Kizer Co., L.P.A., Columbus, Ohio, for plaintiff.

Lee C. Mittman, Columbus, Ohio, for defendant.

Thomas C. Scott, Thompson, Hine & Flory, Columbus, Ohio, Chapter 7 trustee.

## OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

R. GUY COLE, Jr., Bankruptcy Judge.

This adversary proceeding is before the Court pursuant to a complaint filed by Lena M. Skaggs, former wife of the debtor, Joe M. Skaggs, seeking a judgment that certain debts arising from the parties' divorce are excepted from the general discharge pursuant to 11 U.S.C. § 523(a)(5). The Court has jurisdiction in this adversary proceeding under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. This dischargeability action is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1), and (2)(I). The following opinion and order constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### I. *Statement of Facts*

On June 2, 1988, the parties requested the Court to remove this adversary proceeding from the trial calendar and deem it submitted for decision on stipulated facts.

In their motion the parties represented that "there are no material facts in dispute and that the operative facts necessary for decision by the court can be prepared and submitted to the court along with exhibits." Motion at 1. The parties' request was granted by order entered June 7, 1988. On June 23, 1988, the parties filed their "Stipulation of Facts and Submission of Exhibits" ("Stipulations"), which are reprinted *verbatim* below:

Now comes counsel for Lena M. Skaggs, plaintiff, and counsel for Joe M. Skaggs, defendant, and submit to the Court the following Stipulation of Facts and Exhibits to be utilized by the Court, along with the files and records of defendant's bankruptcy case, [in] this adversary proceedings [sic] and the briefs of the parties in arriving at its decision on the issues presented by the pleadings herein.

### STIPULATION

1. The parties stipulate that Joe M. Skaggs and Lena M. Skaggs were divorced October 30, 1979, and the Decree of Divorce is attached as Exhibit "A".

2. The parties stipulate that commencing in January 1986, Joe M. Skaggs was no longer employed for wages; has not been gainfully employed since that time, [sic] and receives a $788.00 per month social security payment.

3. The parties stipulate that Lena M. Skaggs is currently not employed and considers herself at least partially disabled.

4. The parties stipulate and submit to the Court the Certificate of Judgment dated July 25, 1986 (Exhibit "B"), and state that no monthly payments on the $64,300.00 were made by defendant since that time.

5. The parties stipulate and submit the Judgment Entry of the Domestic Relations Court dated April 2, 1987 (Exhibit "C"), and state that the $27,000.00 was applied to the judgment of July 25, 1986.

In addition to the Stipulations, the Court hereby takes judicial notice of certain adjudicative facts set forth in the bankruptcy petition, schedules and statements. The Court finds that debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 22, 1987. The Court further finds: (1) that Joe M. Skaggs ("Debtor") claims a permanent disability and a total gross income of $9,456 for the calendar year prior to filing the petition; (2) that Debtor's gross income is composed solely of his $788 monthly social security benefit payments; (3) that, as of the filing of the petition, Debtor claimed no appreciable assets except for patents, copyrights, franchises and other general intangibles, valued at $3,440, as well as 150 shares of Buckeye Federal Savings & Loan stock, valued at $1,950; and (4) that although Debtor's case was initially designated as a "no-asset case," a succeeding Chapter 7 trustee has retained counsel for the purpose of pursuing possible preference and fraudulent transfer claims on behalf of the estate.

### II. *Discussion*

#### A. Introduction

Plaintiff is asking this Court to declare nondischargeable certain debts arising out of the parties' Agreed Judgment Entry Decree of Divorce ("Decree"), entered by the Court of Common Pleas, Franklin County, Ohio, on November 26, 1979. Plaintiff relies almost entirely on the following language contained under a section of the Decree captioned "Alimony & Other Spousal Support":

It is further Agreed and therefore ORDERED, ADJUDGED and DECREED that the defendant shall pay or cause to be paid to the plaintiff as and for sustenance alimony for the plaintiff's maintenance and support, the sum of Two Thousand Dollars ($2,000.00) per month, payable until the plaintiff's death, remarriage or cohabitation.

It is further Agreed and therefore ORDERED, ADJUDGED and DECREED that the defendant shall pay to the plaintiff as additional support and maintenance and in discharge of any other obligation for spousal support, the sum of Four Thousand Dollars ($4,000.00) per

month for One Hundred Twenty-six (126) consecutive months.

Decree at 3. Thus, the Decree requires the Debtor to pay the Plaintiff, as alimony, maintenance and support, the sum of $2,000 per month (the "$2,000 Award"). The Debtor also is required to pay Plaintiff, as additional support and in satisfaction of any other obligation for spousal support, the sum of $4,000 per month (the "$4,000 Award") for 126 consecutive months. The Decree contains a separate section captioned "Property Settlement," under which other property is divided between the parties.

The issues which this Court must determine in rendering a judgment in this adversary proceeding are as follows:

(1) whether the $2,000 Award and $4,000 Award are in the nature of alimony, maintenance or support,

(2) whether the amount of alimony, maintenance or support awarded, if any, is so excessive that it is manifestly unreasonable under traditional concepts of support; and

(3) if the Court finds that the award is too excessive to be fairly considered in the nature of alimony, maintenance or support, what is a reasonable limit on the nondischargeability of that obligation for purposes of bankruptcy.

Plaintiff claims that the $2,000 Award and $4,000 Award are in the nature of alimony, support or maintenance. So reasoning, the Plaintiff asks the Court to find that the $2,000 Award and $4,000 Award are nondischargeable obligations, as to both the prepetition arrearage and postpetition obligations under the Decree. The Plaintiff further requests that the Court refuse to adjust the amount of the awards provided in the Decree.

Debtor admits that the $2,000 Award represents a nondischargeable debt, but argues that changed circumstances occurring in January 1986 support a finding of dischargeability after that date. Defendant also argues that the provision in the Decree providing for the $4,000 Award represents a property settlement and is, therefore, dischargeable.

## B. The Alimony, Support or Maintenance Exception to Discharge

The starting point for the Court's analysis is 11 U.S.C. § 523(a)(5), which provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; . . . .

The legislative history to § 523(a)(5) is unequivocal: what constitutes alimony, maintenance or support will be determined under the bankruptcy laws, not state law. *See,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 363–364 (1977) and S.Rep. No. 989, 95th Cong., 2d. Sess. 77–79 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787; *Singer v. Singer (In re Singer),* 18 B.R. 782, 784 (Bankr.S.D.Ohio 1982), *aff'd.* 787 F.2d 1033 (6th Cir.1986).

The issues presented for determination in this case are controlled by the Sixth Circuit's decisions in *Calhoun v. Calhoun (In re Calhoun),* 715 F.2d 1103 (6th Cir.1983) and *Singer v. Singer (In re Singer), supra.* In *Calhoun,* the debtor husband appealed the bankruptcy court's summary judgment that his assumption of five loan obligations pursuant to a separation agreement between him and his former wife were "in the nature of" support or alimony and therefore nondischargeable debts under 11 U.S.C. § 523(a)(5). The bankruptcy

court had concluded that the language of the separation agreement controlled the issue of dischargeability unless the compelling weight of the evidence suggested that the agreement would work a manifest injustice. The Sixth Circuit disagreed, holding that the bankruptcy court applied an incorrect legal standard by improperly shifting the burden of proof from the plaintiff spouse to the debtor to show that the agreement does not mean what it says or work a manifest injustice. The Sixth Circuit ruled that:

> Placing this degree of reliance upon the language of the parties' agreement and placing the burden of persuasion on the debtor are legal errors ...

715 F.2d at 1111. The Sixth Circuit reversed the judgment of the bankruptcy court and remanded the case for further proceedings consistent with its opinion.

In reaching its decision in *Calhoun,* the Sixth Circuit articulated a four-part test to assist the bankruptcy court in determining whether an award is a support obligation as opposed to a property settlement. The elements of this four-prong test are as follows:

(1) whether the intent of the state court or the parties was to create a support obligation;

(2) whether the support provision has the actual effect of providing necessary support;

(3) whether the amount of support is so excessive as to be unreasonable under traditional concepts of support; and

(4) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law.

*Calhoun,* 715 F.2d at 1109–1111; *Singer* 787 F.2d at 1036. Although *Calhoun* involved a debt-assumption provision in a separation agreement, the language of the court's opinion has general applicability in all cases brought under § 523(a)(5). *Singer,* 787 F.2d at 1038–39 n. 2.

■ Both *Calhoun* and *Singer* support the unequivocal language of the legislative history concerning the applicability of federal, as opposed to state, law in resolving the support/property settlement dichotomy. Each of these decisions establishes that federal bankruptcy law, not state law, controls the determination of whether a debt is "in the nature of" alimony, support or maintenance. *Calhoun,* 715 F.2d at 1107; *Singer* 787 F.2d at 1035. Notwithstanding, the Sixth Circuit has made it clear that the bankruptcy courts should not sit as "super divorce courts." *Calhoun,* 715 F.2d at 1110 n. 12; *Singer,* 787 F.2d at 1035. Nevertheless, while state law is not binding, it may provide a useful source of guidance. *In re Spong,* 661 F.2d 6 (2d Cir.1981); *Calhoun,* 715 F.2d at 1107–08.

Applying the *Calhoun* decisional framework, the Court's initial inquiry must be whether the state court or the parties to the divorce intended to create an obligation to provide alimony, support or maintenance. In attempting to ascertain intent, the language of the parties' (or the state court's) characterization of the debt does not control; rather, the plaintiff has the burden to establish nondischargeability. *Calhoun,* 715 F.2d at 1111 n. 15. Thus, the plaintiff in a § 523(a)(5) dischargeability action has the burden on the issue of intent. If the state court or the parties did not intend to create an obligation to provide alimony, support or maintenance, the inquiry ends there. In making this determination the Court may consider any relevant evidence, including those factors utilized by state courts to make a factual determination of intent to create a support obligation. *Calhoun,* 715 F.2d at 1109. These factors include:

(1) whether there is an underlying obligation to pay alimony or support in the first instance;

(2) the amount of alimony or support a state court would have reasonably granted;

(3) whether a provision is made for termination of the debtor's obligation upon remarriage of the former spouse or age of majority of the children; and

(4) other factors which might assist the bankruptcy court in discerning either

the underlying purpose of the state decree or the actual intentions of the parties.

See, *Calhoun*, 715 F.2d at 1107–08.

### C. Application to This Proceeding

■ Plaintiff, in her brief, argues that "there is absolutely no evidence before this Court that would indicate that the intention of the parties was other than to supply support." Brief at 4. However, as the *Calhoun* court makes clear, the Plaintiff has the burden of proving that there was an intent to create a support obligation. The Court cannot find, on the limited record before it, that the $4,000 Award represents an intent to create a support obligation. In fact, there is *no* evidence in the record as to the parties' intent or the intent of the state court, except for the inclusion of the $4,000 Award under the section of the Decree that concerns alimony and support. The mere fact that the parties previously designated the $4,000 Award as support, standing alone, simply lacks sufficient probative value to persuade the Court that the parties intended to create a support obligation. The Court must, as *Calhoun* and *Singer* instruct, look behind mere designations of parties in determining their intent: the substance of the obligation and the circumstances under which it was created must prevail over labels. Inasmuch as there is no evidence behind the parties' designation of the $4,000 Award, nor any other probative evidence as to intent, the Plaintiff has simply failed to carry her burden of proof on this issue.[1]

Although our inquiry ends here, a further deficiency in the record exists with respect to the issue of whether the $4,000 Award has the actual *effect* of providing necessary support. While the Stipulations indicate that Plaintiff is currently not employed and considers herself partially disabled, there is no evidence concerning her assets, income, age, education, daily needs, or similar matters which a state court might consider in reviewing a support obligation. The omission of any evidence on this second prong of the *Calhoun* test further demonstrates the inability of the Plaintiff to meet her required burden.

■ The final matter for determination by the Court is whether, on a continuing basis, the state court's award of alimony, support or maintenance is manifestly unreasonable under traditional concepts of support. *Calhoun*, 715 F.2d at 1110. As noted by the *Calhoun* court, if the circumstances of the debtor have changed from the time the obligation to the former spouse was created so as to make such support now inequitable, the bankruptcy court may consider the debtor's current general ability to pay insofar as it relates to the debtor's continuing obligation. It is not intended that the bankruptcy court sit as a super divorce court; rather, the purpose of such inquiry is to ensure that the degree of support represented, particularly in uncontested cases, does not clearly exceed that which might reasonably have been awarded as support by a state court after an adversarial proceeding. *Calhoun*, 715 F.2d at 1110 n. 12. The Court's review of the Decree indicates that both parties were represented by counsel, although there is no indication that an actual trial was conducted. It is further clear from the record as a whole that the Debtor, apparently a successful entrepreneur at one time, is disabled now and has as his sole means of support the sum of $778 per month in social security benefits. Obviously, his circumstances have changed from the time he agreed to pay $6,000 per month pursuant to the Decree. It is further clear that his nondischargeable support obligation of $2,000 per month far exceeds his current income. The $2,000 Award is, therefore, manifestly excessive and the Court must set a reasonable limit on it.

On the record as it currently exists, the Court cannot determine, under traditional state law factors, what amount of support

---

1. The Plaintiff may have prejudiced herself by failing to include stipulated facts which address the issue of intent, or by agreeing to submit this proceeding on the limited Stipulations which are of record. Had an actual trial been conducted, the Plaintiff probably would have introduced testimony on the issue of intent and perhaps could have met her burden.

would be reasonable. The Court has no information as to the Debtor's reasonable living expenses, such as the expenses normally included in a monthly budget. Accordingly, the Debtor is hereby ordered to submit a budget of his monthly expenses to the Court, and a copy to counsel for Plaintiff, within fourteen (14) days from the entry of this opinion and order. The Court will review the budget and determine whether, and to what extent, it is appropriate to adjust the $2,000 Award on a prospective basis. In the event the Debtor fails to submit an acceptable budget within the time provided the Court will not disturb the $2,000 Award. The Court further presumes that if the Debtor is able at a later date to pay the entire $2,000 monthly support obligation, the Plaintiff retains the ability to request another adjustment in a court of competent jurisdiction.

In sum, the Court finds that the $2,000 Award is a debt in the nature of alimony, support or maintenance. Further, the Court is unpersuaded that the $2,000 Award should be reduced as of January, 1986. Accordingly, Debtor's obligation under the Decree as to the $2,000 Award is nondischargeable up to the date of filing of the petition. The Court is unable, on the record, to determine the exact amount of that arrearage.

The Court further finds that the Plaintiff has not met her burden to show that the $4,000 Award is in the nature of alimony, support or maintenance and, therefore, finds such obligation to be a dischargeable debt, both as to any accumulated arrearage and Debtor's continuing post-bankruptcy obligations thereunder.

Based upon the foregoing, judgment shall be entered for the Plaintiff for all arrearages as to the $2,000 Award existing as of the filing date of the petition. The remainder of the arrearage, resulting from nonpayment of the $4,000 Award, is hereby discharged as well as Debtor's continuing obligation to make such $4,000 monthly payments. The Debtor's postpetition obligation shall continue as to the $2,000 Award in an amount to be determined based upon the Court's subsequent review of Debtor's budgeted living expenses.

IT IS SO ORDERED.