**In re John LOCK, Debtor.**

**Ester LOCK, Plaintiff,**

v.

**John LOCK, Defendant.**

**Bankruptcy No. 92–09763–R.
Adv. No. 92–1300–R.**

United States Bankruptcy Court,
E.D. Michigan, S.D.

Sept. 15, 1993.

Kirk D. McMullen, Monroe County Friend of the Court, Monroe, MI, for plaintiff.

Paul H. Steinberg, Mark Shapiro, Southfield, MI, for defendant.

## SUPPLEMENTAL OPINION

STEVEN W. RHODES, Bankruptcy Judge.

This matter is before the Court on the plaintiff's motion for summary dismissal of the defendant's counter-complaint. This opinion supplements the bench decision given on April 29, 1993, granting the motion.

### I.

John Lock is the debtor in this Chapter 7 proceeding. Ester Lock is the debtor's former spouse, and the plaintiff in this adversary proceeding.

The parties were divorced in 1972. The divorce decree provided that the debtor would pay the plaintiff $900 per month for child support. The debtor did not make the required payments. On June 27, 1989, the state court entered a judgment requiring the debtor to pay past due child support and interest in the amount of $164,668.86. This order was entered following a complete review of the facts regarding the debtor's child support arrearage.

### II.

The debtor's schedules list a debt of $80,-000 for interest on this child support arrearage. The plaintiff filed this adversary proceeding to have both the interest[1] and the principal debt for child support declared nondischargeable. The debtor counter-claimed, alleging that a portion of the obligation owing by him to his ex-spouse should be discharged. The debtor asserts that, although designated as an obligation for child support, the debt is not actually

for child support because it is unreasonable and excessive.

The plaintiff filed this motion for summary dismissal of the counter-complaint. The motion asserts that the reasonableness of the debtor's child support obligations has been litigated at least once, and perhaps more than once, in the state court. Thus, applying *res judicata* or collateral estoppel, plaintiff asserts that the defendant is precluded from litigating that issue again. She argues that the obligation established by the state court was in the nature of child support, that there is no basis to characterize it in any other way or to determine that it is an obligation of any other nature, and that the reasonableness of the amount of the obligation is not relevant in these circumstances.

In response, the debtor contends that the Court must consider the reasonableness of the obligation in determining its dischargeability. He further contends that there are issues of fact regarding the reasonableness of the child support obligation, both in regard to the arrearage amount and in regard to the continuing obligation for one of the children.

### III.

■ The issue raised by this motion is whether the debtor's obligations to the plaintiff are nondischargeable under 11 U.S.C. § 523(a)(5)[2] because these obligations are in the nature of child support. The Sixth Circuit has interpreted this section in two cases: *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983); and *Singer v. Singer (In re Singer)*, 787 F.2d 1033 (6th Cir.1986).

---

**1.** The parties filed cross-motions for summary judgment on the question of the dischargeability of the interest portion of the judgment. The Court granted the plaintiff's motion and denied the debtor's motion, holding that the interest is nondischargeable to the extent that the underlying debt is nondischargeable.

**2.** Section 523(a) provides in pertinent part:
A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record ... but not to the extent that—
(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support....
11 U.S.C. § 523(a) (1989).

In *Calhoun,* the issue was whether the debtor's agreement in his divorce judgment to assume certain marital debts and hold his former spouse harmless for such debts was nondischargeable support or dischargeable property settlement. The court held that in proving nondischargeability, the plaintiff must establish four elements:

1) First, whether the parties and state court intended the obligation to be for support or maintenance;

2) Second, whether the obligation has the effect of providing necessary support;

3) Third, whether the obligation is reasonable; and

4) Fourth, if the entire amount of the obligation is not reasonable, what amount would be reasonable to provide the former spouse support.

*Calhoun,* 715 F.2d at 1109–10.

Three years later, the Sixth Circuit decided *Singer.* At issue in *Singer* was a divorce decree which provided that neither spouse would pay the other support, and that the debtor would make monthly payments to the former spouse for ten years. The debtor alleged that the payments were in settlement of the former spouse's interest in the marital home, and was thus a dischargeable property settlement.

The *Singer* court held that the obligation was nondischargeable because it was "a property settlement in conjunction with alimony, maintenance, or support...." *Singer,* 787 F.2d at 1034. The majority opinion in *Singer* did not refer to the *Calhoun* four part test for determining dischargeability of debt assumption.

For the reasons stated below, this Court believes that *Singer,* rather than *Calhoun,* is the appropriate source of authority for this case.

### IV.

The issue framed in the *Calhoun* case was very specifically identified by the Sixth Circuit:

This case presents the issue of when a debtor's assumption of joint debts and the undertaking to hold a former spouse harmless as part of a marriage separation agreement constitutes support or alimony payments to the former spouse resulting in non-dischargeable debts under 11 U.S.C. § 523(a)(5).

*Calhoun,* 715 F.2d at 1106.

There are two critical distinctions between the *Calhoun* case and the present case.

### A.

While the *Calhoun* case dealt with the dischargeability of an obligation to assume a joint debt, the issue in the present case concerns the dischargeability of an obligation which was undisputedly intended as child support. The distinction is crucial because in *Calhoun* the issue was whether the assumption of joint obligations was in the nature of spousal support or property settlement.

The language of the *Calhoun* opinion strongly suggests that the tests announced therein are applicable only in circumstances involving the obligation to assume joint debts. For example, in stating the first of the tests to be applied, the court said: "We believe that the initial inquiry must be to ascertain whether the state court or the parties to the divorce *intended* to create an obligation to provide support through the assumption of the joint debts." *Id.* at 1109 (emphasis in original).

The court's emphasis on the specific facts before it was also apparent when the court described the second test:

If the bankruptcy court finds, as a threshold matter, that assumption of the debts was intended as support it must next inquire whether such assumption has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied.

*Id.* (emphasis in original).

Finally, in describing the last two tests, the *Calhoun* court again emphasized the factual circumstances in which the case arose.

Having found that the loan assumption has the effect of providing necessary support, the Bankruptcy Court must finally determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support.

*Id.* at 1110.

Therefore, this Court concludes that *Calhoun* is limited to cases involving debt assumption, and is therefore inapplicable to the present case.

The *Singer* decision supports this Court's conclusion. The issue presented in *Singer* was whether an obligation in a divorce judgment was dischargeable under § 523(a)(5). The court held:

The three basic scenarios arising from the statute are as follows: 1, if payment, i.e., Settlement Agreement, is for alimony, maintenance, or support, the debt is non-dischargeable; 2, conversely, if the payment, or Settlement Agreement is strictly a property settlement, the debt is dischargeable; 3, where there is a property settlement in connection with alimony, maintenance, or support, the debt is non-dischargeable.

The present case is an example of this "third" scenario. Defendant-appellant argues that paragraph 15 of the Settlement Agreement clearly indicates a "property settlement" in lieu of alimony, thereby making the debt dischargeable.

*Singer*, 787 F.2d at 1034.

The significance of *Singer* is that the court did not apply the four prong test of *Calhoun* in determining the dischargeability of the obligation. This Court can only conclude that the court in *Singer* made the specific decision not to apply the *Calhoun* analysis in the circumstances of that case. Judge Guy, in his concurring opinion, came to the conclusion that the test in *Calhoun* should be applied, and the obligation should be held nondischargeable using that analysis in that case. However, the majority in *Singer* did not follow that approach; rather, the majority simply looked at the agreement itself and determined that the obli-

gation was in the nature of support or maintenance.

This Court recognizes that there are many bankruptcy decisions in the Sixth Circuit which have, nevertheless, applied the *Calhoun* test in circumstances similar to those presented in the case at bar. *See, e.g., In re Skaggs*, 91 B.R. 1018 (Bankr. S.D.Ohio 1988); *In re Leupp*, 73 B.R. 33 (Bankr.N.D.Ohio 1987). However, this Court concludes that to a large extent, those decisions applied *Calhoun* without any doctrinal analysis of whether indeed *Calhoun* should be applied in the circumstances.

### B.

The *Calhoun* case is also distinguishable because in that case the obligation arose from a negotiated separation agreement. In the present case, the debtor's obligation to the plaintiff has been litigated and relitigated by the parties, and results from a recent judgment by the state court. This is a significant distinction because, at least in part, the basis for the *Calhoun* decision is the fundamental principle that one cannot contract away bankruptcy rights. Specifically, the court stated:

We recognize that such inquiry may, in effect, modify a judgment or decree of a state court. In view of the congressional mandate to apply a federal standard, this cannot be avoided. Actual interference, however, will probably be minimal. In a contested case the likelihood that the state court would have awarded support where it was unnecessary is sufficiently remote that such interference by the bankruptcy court will seldom be necessary. When, as in the present controversy, the decree is not the result of a contested case but merely incorporates the parties' agreement, the concern for comity is of less importance. To allow the parties' characterization of a loan assumption in such cases to control pro forma would permit the debtor to agree to forego his rights under the bankruptcy laws.

*Calhoun*, 715 F.2d at 1109–10 n. 10.

The court in *Calhoun* further examined the distinction:

We emphasize that the nature of this final inquiry as to whether the loan assumptions would constitute an excessive degree of support beyond that which any state court would reasonably allow given the parties' relative circumstances, is a limited one. It is not intended that the Bankruptcy Court sit as a "super-divorce" court. Rather, the purpose of such inquiry is to ensure that the degree of support represented by the loan assumptions, particularly in uncontested cases, does not clearly exceed that which might reasonably have been awarded as support by a state court after an adversarial proceeding.

*Id.* at 1110 n. 12.

### V.

Therefore, this Court concludes that it is not appropriate to apply the four part test set forth in *Calhoun* to the present case. Rather, under *Singer*, it is simply for this Court to determine, as a factual matter, whether the obligation is for alimony, maintenance or support, and if so, to determine that the debt is nondischargeable.

■ In the present case, there is nothing before the Court, by way of affidavit or otherwise, from which this Court can find that the obligation created by the state court is for any other purpose than for child support. There is simply no suggestion, let alone proof, that the obligations were in the nature of a property settlement.

Counsel for the debtor suggests that the debt is in the nature of a windfall. The answer to that is that a debt in the nature of a windfall is no debt at all. Yet the obligation in this case is clearly a debt which has been created by a court following an adversary process and is entitled to substantial, if not conclusive, weight.

In the end, the debtor's position that *Calhoun* requires this Court to review the reasonableness of the state court judgment would indeed require this Court to become a "super-divorce" court. This Court is simply unwilling to interpret *Calhoun* in such a broad way.

Accordingly, the plaintiff's motion to dismiss the counter-complaint is granted and the debtor's obligations are held nondischargeable under 11 U.S.C. § 523(a)(5).