### In re Ronald Donzie SHELTON, Debtor.

### Sandra Kathleen SHELTON, Plaintiff,

### v.

### Ronald Donzie SHELTON, Defendant.

Bankruptcy No. 2–87–04167.
Adv. No. 2–87–0026.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Sept. 26, 1988.

Charles W. Gayton, Columbus, Ohio, for plaintiff.

Mark Fisher, Columbus, Ohio, for defendant/debtor.

OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

R. GUY COLE, Jr., Bankruptcy Judge.

This adversary proceeding is before the Court pursuant to a complaint filed by Sandra Shelton, former wife of the debtor, Ronald Donzie Shelton, seeking a judgment that certain debts arising from the parties' divorce are excepted from the general discharge pursuant to 11 U.S.C. § 523(a)(5). The Court has jurisdiction in this adversary proceeding under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. This dischargeability action is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1), and (2)(I). The following opinion and order constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### I. *Statement of Facts*

On July 1, 1987, the parties filed a joint "Stipulation of Facts" ("Stipulations"), pursuant to which they waived an actual trial and asked the Court to remove this adversary proceeding from the trial calendar and deem it submitted for decision on the Stipulations. The Stipulations are reprinted *verbatim* below:

All parties herein stipulate the following facts as true for purposes of trial to the Court of the within action:

1. The plaintiff and debtor were divorced in 1981 and a judgment entry, decree of divorce, was entered and an accurate copy of that judgment entry is attached hereto and marked Exhibit A. This divorce action case number is 80DR–12–3693 and the case is lodged in the Franklin County Court of Domestic Relations.

2. On April 24, 1986, the Franklin County Court of Domestic Relations journalized a contempt purge order and an accurate copy of said entry is attached hereto and marked Exhibit B.

3. The debtor, Ronald Donzie Shelton, is in default with regard to the payments to the Chemical Bank, the medical and hospitalization insurance for the minor children of the parties and the debtor has not complied with the purge orders set out in the order of April 24, 1986, which is attached and marked Exhibit B.

4. All parties agree that the Court shall decide the claim of the plaintiff upon the agreed stipulation set out above and upon the briefs of counsel. All parties hereby waive a court trial in this case.

### II. *Discussion*

### A. Introduction

Plaintiff is asking this Court to declare nondischargeable certain debts arising out of the parties' Judgment Entry–Decree of Divorce ("Decree"), entered by the Court of Common Pleas, Franklin County, Ohio, on July 28, 1981. The Decree requires Debtor to make mortgage payments to Chemical Mortgage Company, holder of a first mortgage on the parties' marital residence, and to hold Plaintiff harmless thereon. Plaintiff argues that this provision in the Decree represents a nondischargeable obligation. The Decree also requires Debtor to maintain hospitalization and major medical insurance coverage for the benefit of the Plaintiff and the parties' two minor children. Debtor is required, too, to pay all the children's dental expenses, and their hospital and medical expenses not paid by insurance.

Debtor apparently failed to provide and pay for health insurance as required by the Decree. Plaintiff obtained an order of contempt in the Common Pleas Court. Debtor was fined $500 and ordered to be incarcerated for ten days, but was given an opportunity to purge the contempt order by *inter alia,* paying the future payments of Plaintiff's health insurance policy and by reimbursement to Plaintiff of health insurance premiums in the amount of $3,131.50 paid by her as a result of Debtor's nonpayment. Plaintiff argues that the Common Pleas Court's contempt order constitutes a finding that Debtor's obligation to pay Plaintiff $3,131.50 is in the nature of child

support or maintenance and, thus, is non-dischargeable.

The Debtor says that he is not attempting to discharge his ongoing duty to provide medical insurance to the Plaintiff and their children. He is arguing simply that Plaintiff's voluntary action in paying delinquent premiums, absent an order of the Court of Common Pleas, cannot be considered as support payments.

The issues which this Court must determine in rendering a judgment in this adversary proceeding are as follows:

(1) whether the provision in the Decree requiring Debtor to make the mortgage payments, and hold Plaintiff harmless thereon, represents an obligation in the nature of alimony, maintenance or support, and

(2) whether the $3,130 paid by Plaintiff to keep health and medical insurance active represents a nondischargeable support or maintenance obligation.

B. The Alimony, Support or Maintenance Exception to Discharge

The starting point for the Court's analysis is 11 U.S.C. § 523(a)(5), which provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; . . . .

The legislative history to § 523(a)(5) is unequivocal: what constitutes alimony, maintenance or support will be determined under the bankruptcy laws, not state law. See, H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977) and S.Rep. No. 989, 95th Cong., 2d.Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862–5865, 6318; Singer v. Singer (In re Singer), 18 B.R. 782, 784 (Bankr.S.D.Ohio 1982), aff'd. 787 F.2d 1033 (6th Cir.1986).

The issues presented for determination in this case are controlled by the Sixth Circuit's decisions in Calhoun v. Calhoun (In re Calhoun), 715 F.2d 1103 (6th Cir.1983) and Singer v. Singer (In re Singer), supra. In Calhoun, the debtor husband appealed the bankruptcy court's summary judgment that his assumption of five loan obligations pursuant to a separation agreement between him and his former wife were "in the nature of" support or alimony and therefore nondischargeable debts under 11 U.S.C. § 523(a)(5). The bankruptcy court had concluded that the language of the separation agreement controlled the issue of dischargeability unless the compelling weight of the evidence suggested that the agreement would work a manifest injustice. The Sixth Circuit disagreed, holding that the bankruptcy court applied an incorrect legal standard by improperly shifting the burden of proof from the plaintiff spouse to the debtor to show that the agreement does not mean what it says or work a manifest injustice. The Sixth Circuit ruled that:

Placing this degree of reliance upon the language of the parties' agreement and placing the burden of persuasion on the debtor are legal errors . . .

715 F.2d at 1111. The Sixth Circuit reversed the judgment of the bankruptcy court and remanded the case for further proceedings consistent with its opinion.

In reaching its decision in Calhoun, the Sixth Circuit articulated a four-part test to assist the bankruptcy court in determining whether an award is a support obligation as opposed to a property settlement. The elements of this four-prong test are as follows:

(1) whether the intent of the state court or the parties was to create a support obligation;

(2) whether the support provision has the actual effect of providing necessary support;

(3) whether the amount of support is so excessive as to be unreasonable under traditional concepts of support; and

(4) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law.

*Calhoun,* 715 F.2d at 1109–11; *Singer* 787 F.2d at 1036. Although *Calhoun* involved a debt-assumption provision in a separation agreement, the language of the court's opinion has general applicability in all cases brought under § 523(a)(5). *Singer,* 787 F.2d at 1038–39 n. 2.

Both *Calhoun* and *Singer* support the unequivocal language of the legislative history concerning the applicability of federal, as opposed to state, law in resolving the support/property settlement dichotomy. Each of these decisions establishes that federal bankruptcy law, not state law, controls the determination of whether a debt is "in the nature of" alimony, support or maintenance. *Calhoun,* 715 F.2d at 1107; *Singer* 787 F.2d at 1035. Nevertheless, while state law is not binding, it may provide a useful source of guidance. *In re Spong,* 661 F.2d 6 (2d Cir.1981); *Calhoun,* 715 F.2d at 1107–08. Notwithstanding, the Sixth Circuit has made it clear that the bankruptcy courts should not sit as "super divorce courts." *Calhoun,* 715 F.2d at 1110 n. 12; *Singer,* 787 F.2d at 1035.

■■■ Applying the *Calhoun* decisional framework, the Court's initial inquiry must be whether the state court or the parties to the divorce intended to create an obligation to provide alimony, support or maintenance. In attempting to ascertain intent, the language of the parties' (or the state court's) characterization of the debt does not control; rather, the plaintiff has the burden to establish nondischargeability. *Calhoun,* 715 F.2d at 1111 n. 15. Thus, the plaintiff in a § 523(a)(5) dischargeability action has the burden on the issue of

intent. If the state court or the parties did not intend to create an obligation to provide alimony, support or maintenance, the inquiry ends there. In making this determination the Court may consider any relevant evidence, including those factors utilized by state courts to make a factual determination of intent to create a support obligation. *Calhoun,* 715 F.2d at 1109. These factors include:

(1) whether there is an underlying obligation to pay alimony or support in the first instance;

(2) the amount of alimony or support a state court would have reasonably granted;

(3) whether a provision is made for termination of the debtor's obligation upon remarriage of the former spouse or age of majority of the children; and

(4) other factors which might assist the bankruptcy court in discerning either the underlying purpose of the state decree or the actual intentions of the parties.

*See, Calhoun,* 715 F.2d at 1107–08.

### C. Application to This Proceeding

It is undisputed that amounts payable to third parties on debts for which spouses are jointly liable can be held nondischargeable so long as the required payments are determined to be actually alimony, maintenance or support. *Stranathan v. Stowell (Matter of Stranathan),* 15 B.R. 223 (Bankr.D.Neb.1981). The apparent intent and purpose of § 523(a)(5) is to prevent a debtor from discharging his responsibilities to an ex-spouse or children, even to the extent that such support was in the form of a debt to be paid to a third party. *Mullins v. Mullins (In re Mullins),* 14 B.R. 771, 773 (Bankr.W.D.Okla.1981) (and cases cited therein). To the extent a debtor's agreement to hold an ex-spouse harmless on joint debts is in payment of alimony, maintenance or support, it is nondischargeable. *Berman v. Berman (In re Berman),* 26 B.R. 301 (Bankr.S.D.Fla.1982).

■■■ On the record before the Court, including the admittedly poorly-drafted Decree, there is no evidence to indicate that

the parties or the Court of Common Pleas intended to create an obligation to provide alimony, maintenance or support in connection with the mortgage obligation. To the contrary, the Decree seems to contemplate sale of the marital residence and an equal sharing in the net sale proceeds. This is strongly indicative of a division of property as opposed to an obligation to provide alimony, maintenance or support. Having found no evidence establishing the threshold element of the *Calhoun* four-prong test —intent to create a support obligation—the Court's inquiry properly ends here. However, there likewise is no evidence indicating that payment of the mortgage by Debtor has the effect of providing the support necessary to ensure that plaintiff's daily needs are met. *Calhoun,* 715 F.2d at 1109. Accordingly, Debtor's obligation to make mortgage payments on the marital residence is a dischargeable debt.

 On the other hand, Debtor's obligation to maintain hospitalization and major medical insurance coverage, and to pay all the children's dental, hospital and medical expenses, is a nondischargeable debt— and Debtor so acknowledges. Nevertheless, Debtor seeks to evade reimbursing Plaintiff for premiums and expenses incurred by her to keep the policies in force due to Debtor's default. Debtor argues that Plaintiff would have to obtain a contempt order from the Common Pleas Court as a precondition of this Court finding that these expenses are nondischargeable. This argument is ludicrous. Under Ohio law, the Common Pleas Court is required to include in the support order the requirement that one or both of the parents provide for the health care needs of their children. *See,* § 3109.05(A), Ohio Revised Code. The courts confronted with this issue typically have held that a debtor's obligation to pay medical insurance for his children is a support obligation. *Growney v. Growney (In re Growney),* 15 B.R. 849, 850 (Bankr.W.D.N.Y.1981); *Berman,* 26 B.R. at 303. Therefore, the Court finds that the Common Pleas Court and the parties intended Debtor's obligation to maintain the aforementioned insurances on behalf of his children and his wife to be a nondischargeable obligation. As the Second Circuit Court of Appeals said in *In re Spong, supra,* dischargeability must be determined by the substance of the liability rather than its form. If the debtor fails to satisfy his obligation to the medical claimants, the debtor "will, at the same time, fail to satisfy his obligations to his wife [and children]." *Spong,* 661 F.2d at 10–11.

Based upon the foregoing, the Court holds that Debtor's obligation to make mortgage payments to Chemical Mortgage Company is a dischargeable debt, and any arrearage in that regard is hereby subject to the general bankruptcy discharge. Debtor's obligation to pay various health-related premiums and medical, dental and hospital expenses is not discharged. Debtor is, therefore, ordered to reimburse Plaintiff the sum of $3,131.50 expended by her and any other amounts so expended since the filing of the petition for such premiums and expenses. A judgment entry reflecting the Court's order shall be entered forthwith.

IT IS SO ORDERED.