In re Mark S. KAUFMAN, Debtor.

Noreen Mary MACKEY, Plaintiff,

v.

Mark S. KAUFMAN, Defendant.

Bankruptcy No. 889–91298–478.
Adv. No. 889–0142.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

April 5, 1990.

As Amended June 8, 1990.

Stephen S. Danetz, Forest Hills, N.Y., for plaintiff.

Macco Hackeling & Stern by C. Steven Hackeling, Huntington, N.Y., for defendant-debtor.

## DECISION

DOROTHY EISENBERG, Bankruptcy Judge.

Plaintiff, Noreen Mary Mackey, (hereinafter referred to as "Plaintiff" and/or "Wife"), the former spouse of Mark S. Kaufman (hereinafter referred to as "Debtor"), has instituted this adversary proceeding seeking a determination that certain debts owed to her by the Debtor pursuant to the terms of a Decree of Divorce are excepted from discharge pursuant to 11 U.S.C. § 523(a)(5). The parties have both moved for summary judgment and have submitted a joint statement of facts pursuant to Local Rule 22(b).

Both parties seek a decision from this Court based upon the pleadings and documents in the file, a joint statement of facts pursuant to Rule 22(b) of the Local Rules of this Court, and upon the written Separation Agreement between the parties dated December 24, 1987, which was incorporated into the subsequent Judgment of Divorce.

Plaintiff contends that the debts owed to her are non-dischargeable because they are actually in the nature of alimony, maintenance and support. The complaint alleges that pursuant to the terms of the Separation Agreement commencing January 1, 1988, the Debtor was to pay to Plaintiff "for support and maintenance" $1,000 per month for a period of thirty-six (36) months, an initial payment of $4,000 and a share of the proceeds upon the sale of the former marital premises, if sold within thirty-six (36) months, or if not sold prior thereto, then, upon the expiration of the thirty-six (36) month period Plaintiff was to receive any balance remaining unpaid to her so that the total payments to her would equal $150,000. In addition, she claims that the Debtor was to pay Plaintiff's Citibank Mastercard bill in the amount of $2,800, certain medical bills and attorneys fees of the Plaintiff in the amount of $2,500.

Plaintiff's Complaint acknowledges having received a total of $48,500 from the Debtor and claims that $101,500 of the $150,000 remains due to her. In addition to her debt obligations which are included in the Separation Agreement, Plaintiff argues that all the debts are in the nature of maintenance and support and therefore non-dischargeable pursuant to Section 523(a)(5) of the Bankruptcy Code. She seeks a non-dischargeable judgment in the sum of $106,838 plus costs and attorneys fees.

The Debtor has cross moved for summary judgment seeking a determination that the debts due to the Plaintiff are in the nature of a property settlement and therefore dischargeable.

## FACTS

The Debtor filed a Petition for relief under Chapter 7 of the Bankruptcy Code on July 27, 1989. The schedules indicate total assets of $3,025, all of which were claimed and allowed as exempt property. The Trustee appointed in the case has filed a no asset report.

The important provisions of the Separation Agreement are contained in Articles Eighth and Eleventh. Article Eighth entitled "Support and Maintenance for the Wife" provided that the Debtor was to pay to Plaintiff "for her support and maintenance the sum of $1,000 per month as per Article Eleventh (not to exceed thirty-six

(36) months or earlier)". It further provided for the Debtor to maintain a hospital plan for the Plaintiff for a period of one (1) year from the date of the Agreement and to pay automobile insurance on her behalf for one (1) year on one (1) vehicle. The Debtor's obligation to Plaintiff under this Article would terminate if she died. This Article further contained an acknowledgement by Plaintiff that she was accepting the provisions of the Separation Agreement in full and final settlement and satisfaction for her support and maintenance.

Article Eleventh is entitled "Equitable Distribution" and reads as follows:

"In full satisfaction of all claims which the Wife has to equitable distribution of the marital estate or a distributive award in lieu thereof, pursuant to Domestic Relations Law, Section 236, Part B *and* for support and maintenance the Husband shall pay to the wife the following: (emphasis added)

The above sum shall be paid $1,000 per month as provided for in the Article of this Agreement designated as Support and Maintenance for the Wife. The entire $150,000.00 as provided for in this Agreement which shall be the total sum paid to the Wife shall be designated for tax purposes as support and maintenance. This sum shall be paid at the rate of $1,000 per month as per the article for support and maintenance. The Husband shall be obligated to pay such sum until the happening of the earliest of the following events:

(a) At the end of the period of thirty-six (36) months the entire undue portion shall be due and paid in the sum of $110,000 the advanced sum of $4,000 being paid simultaneously with the execution of this Agreement and credited against the $150,000 sum; or

(b) The sum of $1,000 per month until the sale of the marital premises when the entire unpaid portion of the $150,-000 excluding in addition the advance payment of $4,000 shall become due and payable.

However, in the event the marital premises is sold and the Husband nets after all common and customary costs a sum less than a sum necessary to pay the balance to the Wife at that time, he shall pay seventy-five (75%) percent of the net sum received to the Wife simultaneously with the sale and shall pay any balance of the $150,000 gross sum at the rate of $1,000 per month over a period of time not to exceed the original three (3) years.

(c) In the event of the Husband's death prior to the satisfaction of his obligation to the Wife in a sum of $150,-000, any sums still outstanding at the time of his death shall be deemed a lien against the marital premises and shall be satisfied prior to any distribution from the marital residence to any other beneficiary."

Nowhere in the Separation Agreement is any reference made as to how the sum of $150,000 was arrived at. The parties had no issue of the marriage. They were the owners of real property and Plaintiff had agreed to permit the Debtor to occupy the property for which he would be totally responsible for all costs, expenses and repairs until the property was sold. At the time the Separation Agreement was executed, the Plaintiff conveyed all of her interest in this property to the Debtor and the Debtor granted her a mortgage on the premises in the sum of $90,000, with payments to be made pursuant to the Separation Agreement. The Plaintiff agreed to execute a Satisfaction of Mortgage which was to be held in escrow by Plaintiff's matrimonial attorneys and was to be released upon proof that $90,000 was paid to her as per the Separation Agreement.

The parties' personal property did not exceed $25,000 in value and was amicably distributed between the parties at the time the Separation Agreement was executed. The equity interest in the marital property appeared to be less than $75,000. In June of 1989, the marital premises was sold netting a total of $43,697.31 (excluding the contract deposit) of which $27,500 was paid to the Plaintiff out of the proceeds of sale. The balance went to the Debtor and the Debtor's attorney. The Plaintiff had re-

ceived better than half of the net proceeds of the sale of the property.

The Court is not advised anywhere in the pleadings or otherwise as to the status of the mortgage in the sum of $90,000 held in escrow which was to be paid to the Plaintiff as security for all payments due to her. Since the sale of the Real Property was consummated, this Court is left with no alternative but to assume that this mortgage was not paid at the closing since both parties acknowledge that the sale price of the real property was $255,000 and the premises were subject to a first mortgage lien of $195,000.

The joint statement of facts submitted to the Court provides as follows:

1. Noreen Mary Mackey, Plaintiff, and Mark S. Kaufman, Debtor, were husband and wife until their marriage was terminated by a Judgement of Divorce which was entered in the Office of the County Clerk of Nassau County on September 22, 1988.

2. Plaintiff and Debtor entered into a Separation Agreement dated December 24, 1987 (the "Separation Agreement").

3. The Separation Agreement was incorporated into the Judgement of Divorce.

4. The debt due from Debtor to Plaintiff which is the subject of this action was incurred pursuant to the terms of the Separation Agreement.

5. Debtor has paid to, or for the benefit of Plaintiff, the following amounts in accordance with the terms of the Separation Agreement:

a. $4,000 upon execution of the Agreement.

b. $17,000 in monthly payments of $1,000 for the months of January 1988 through May 1989.

c. $27,500 upon the sale of the former marital residence.

d. $362 to Citibank Mastercard.
Further, Plaintiff makes no claim for dentist and psychiatric fees.

6. Plaintiff paid to her attorneys in the divorce proceeding—Moran & Broderick— an amount in excess of the $2,500 which Debtor stipulated to pay towards Plaintiff's legal services rendered prior to the entry of the divorce decree.

7. At the time of the Separation Agreement, the equity value of all assets owned by Plaintiff and Debtor was substantially less than the debt subject to this action.

8. At the time of the Separation Agreement, Plaintiff had no full time source of income; Debtor was a practicing medical doctor.

## DISCUSSION

Section 523(a)(5) of the Bankruptcy Code excepts from a Debtor's general discharge any obligation:

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support ...

11 U.S.C. § 523(a)(5).

■ The spouse seeking a determination that an obligation is nondischargeable on the grounds that it was actually in the nature of alimony, maintenance or support, has the burden of proof. 11 U.S.C.A. § 523(a)(5)(B). *In re Shelton*, 92 B.R. 268 (Bankr.S.D.Ohio 1988, *In re Freyer*, 71 B.R. 912 (Bankr.S.D.N.Y.1987).

■ Federal Bankruptcy Law, not State Law, controls the determination of

whether a debt is "in the nature of" alimony, support or maintenance or is in the nature of a property settlement. *In re Singer,* 787 F.2d 1033 (6th Cir.1986); *In re Calhoun,* 715 F.2d 1103, 1107 (6th Cir. 1983); *In re Skaggs,* 91 B.R. 1018 (Bankr.S.D.Ohio 1988); *In re Shelton,* 92 B.R. at 272; *In re Freyer,* 71 B.R. 912 (Bankr.S.D.N.Y.1987); *In re Petoske,* 16 B.R. 412 (Bankr.E.D.N.Y.1982). Nevertheless, while State Law is not binding, it may provide a useful source of guidance. *In re Calhoun,* 715 F.2d at 1107; *In re Spong,* 661 F.2d 6 (2d Cir.1981).

▇▇▇ The initial inquiry a Court must make in determining whether the provisions of a Separation Agreement are in the nature of alimony or support is to ascertain whether the parties to the agreement "intended" to create a support obligation or intended to divide the property amicably. *In re Calhoun,* 715 F.2d at 1107; *In re Long,* 794 F.2d 928, 930 (4th Cir.1986); *Melichar v. Ost,* 661 F.2d 300, 303 (4th Cir.1981); *In re Shelton,* 92 B.R. at 272; *In re Freyer,* 71 B.R. at 916. In ascertaining the intent[1] of the parties, the Court must look behind mere designations of the parties. The substance of the obligations and the circumstances under which they were created must prevail over any labels attached to the obligations by the parties. *In re Freyer,* 71 B.R. at 916; *In re Eisenberg,* 18 B.R. 1001 (Bankr.E.D.N.Y.1982).

▇▇▇ Courts have considered numerous factors in making the determination as to whether a particular obligation in a Separation Agreement represents alimony, maintenance or support as opposed to a property settlement. Although no one factor is controlling, the most significant factors are:

1. whether the obligation terminates on the death or remarriage of either spouse; *Shaver v. Shaver,* 736 F.2d 1314 (9th Cir.1984), *In re Ingram,* 5 B.R. 232 (Bkrtcy.N.D.Ga., Rome D., 1980), *In re Altavilla,* 40 B.R. 938 (Bkrtcy.Mass.1984);

2. the characterization of the payment in the decree and the context in which the disputed provisions appear; *In re Salinas,* 2 B.C.D. 864 (D.C.Ore. 1976); *In the Matter of Thumm,* 2 B.C.D. 1347 (Bkrtcy.E.D.Wisc.1976); *In re Sledge,* 47 B.R. 349 (D.C.Va. 1981);

3. whether the payments appear to balance disparte [sic] income; *Hoover v. Hoover,* 38 B.R. 325 (D.C.Ohio 1983), *In re Seidel,* 48 B.R. 371 (Bkrtcy.Ill. 1984);

4. whether the payments are to be made directly to the spouse or to a third party; *In re Nelson,* 16 B.R. 658 (Bkrtcy.M.D.Tenn.1981); *Matter of Holt,* 40 B.R. 1009 (D.C.Ga.1984); *In re Calhoun,* 715 F.2d at 1103; *In re Edwards,* 33 B.R. at 942;

5. whether the obligation is payable in a lump sum or in installments over a period of time; *In re Elder,* 48 B.R. 414 (Bkrtcy.Ky.1985), *Matter of Story,* 36 B.R. 546 (Bkrtcy.Fla.1983), *In re Edwards,* 33 B.R. 942 (Bkrtcy.Ga. 1983);

6. whether the parties intended to create an obligation of support; *In re Boyle v. Donovan,* 724 F.2d 681 (8th Cir.1984), *In re Bedingfield,* 42 B.R. 641 (D.C.Ga.1983), *In re Elder,* 48 B.R. 414 (Bkrtcy.Ky.1985);

7. whether an assumption of debt has the effect of providing the support necessary to insure that the daily needs of the former spouse and any children of the marriage are met; *In re Calhoun,* 715 F.2d 1103 (6th Cir. 1983); But see *In re Lewis,* 39 B.R. 842, 846 (Bkrtcy.W.D.N.Y.1984); and

8. whether an assumption of the debt has the effect of providing the support necessary to insure a home for the spouse and minor children; *In re Mencer,* 50 B.R. 80 (Bkrtcy.E.D.Ark. 1985). but see *In re Demkow,* 8 B.R. 554 (Bkrtcy.N.D.Ohio, E.D.1981); *In*

---

1. As a general rule, cases presenting questions of intent are not susceptible to resolution by way of summary judgment. However, in this case, the parties have agreed to have the issues decided by the Court on the basis of the stipulated facts and pleadings presented to the Court.

*re Nelson,* 16 B.R. 658 (Bkrtcy.M.D. Tenn.1981), aff'd in part, rev'd in part, 20 B.R. 1008 (Bkrtcy.D.C.Tenn. 1982).

The overall reading of the Separation Agreement indicates that the parties intended to terminate their marital relationship as quickly as possible and without any lingering long-term financial connections.

■ Pursuant to the Separation Agreement, maintenance and support was to be paid to the Plaintiff within thirty-six (36) months or earlier. All health and auto insurance coverage was to be paid for by the Debtor for only one (1) year after the Separation Agreement was signed. All personal property was immediately divided up and distributed to the parties. The only remaining asset, the marital residence, remained to be distributed amongst the parties. This was the only financial connection which remained and which would require liquidation. The parties agreed to have the Debtor remain in possession until such time as he deemed appropriate to sell the realty. The parties agreed that whether the real property was sold or not, there was to be a fixed sum paid to Plaintiff at the latest within thirty-six (36) months after the Separation Agreement was signed. It is unclear how they arrived at the fixed amount to be paid to the Plaintiff in order to finally terminate their relationship. It is further unclear whether the amount fixed was based on the anticipated equity value of the real property or whether it included the intangible value of the Debtor's professional license which is not mentioned in the Separation Agreement. However, it does not appear that this arbitrary figure was intended as alimony or maintenance and support.

■ The first paragraph of Article Eleventh of the Separation Agreement, which is entitled "Equitable Distribution", refers to the total sum of $150,000 and joins together under that heading (1) the wife's right to equitable distribution of the marital estate or (2) a distributive award in lieu thereof, together with (3) her right for support and maintenance and is clearly ambiguous. The fact that the entire $150,000 provided

for in the Separation Agreement is characterized as being designated support and maintenance for tax purposes does not mean that this Court must accept such characterization. *In re Salinas,* 2 B.C.D. 864 (D.C.Ore.1976); *In the Matter of Thumm,* 2 B.C.D. 1347 (Bankr.E.D.Wisc. 1976); *In re Sledge,* 47 B.R. 349 (D.C.Va. 1981).

This Court holds that the Debtor's obligation to pay the sums included in Article Eleventh which were not included in Article Eighth, i.e. the sum of $114,000, was in the nature of a property settlement, and therefore not non-dischargeable as alimony, maintenance and support. The Debtor's obligation as to this sum was to continue regardless of whether the former spouse remarried or died, and in fact the obligation was to continue in the form of a lien against the marital premises even if the Debtor husband died prior to the satisfaction of this debt.

In addition, the Plaintiff in this case has not proven that the payments provided to her in Article Eighth are insufficient to provide her with the necessary support to meet her daily needs. There is nothing in the record or in the pleadings before the Court to indicate that any provisions for payment to the Plaintiff in the sum of $114,000 was necessary for her maintenance and support, and was not intended to be a money settlement for any property not otherwise dealt with in the Separation Agreement.

■ This Court believes that in addition to being labeled as such, the monthly payments provided for in paragraph Eighth of the Separation Agreement are in the nature of alimony, maintenance and support. The critical factors which lead to this conclusion are: (1) the obligation is payable in installments over a three (3) year period; (2) it appears that at the time of the parties' divorce, the Plaintiff, although qualified as a nurse, was not gainfully employed and might require some short period of time to obtain suitable employment; (3) Plaintiff was not residing in the marital residence and was required to obtain alternative living quarters; and (4) the effect of

the payments is to provide the Plaintiff with the necessary support to meet her daily needs. In consideration of the above factors it is clear to this Court that the payments provided for in paragraph Eighth are non-dischargeable as being in the nature of alimony, maintenance and support.

 The Debtor did agree and obligate himself to pay to Plaintiff $2,500 as an obligation for Plaintiff's counsel fees that were incurred in regard to the matrimonial proceeding and the debt is in the nature of alimony or maintenance and non-dischargeable. *In re Spong,* 661 F.2d 6 (2d Cir. 1981). See also *In re Lang,* 11 B.R. 428 (Bankr.W.D.N.Y.1981); *In re Brassard,* 11 B.R. 90 (Bankr.N.D.Ill.1981); *In re Gilbert,* 10 B.R. 462 (Bankr.N.D.Ind.1981).

The parties did agree that if there were any defaults that the non-defaulting party would be entitled to the payment of costs and reimbursement of reasonable attorneys' fees incurred in bringing a proceeding to enforce the terms of the agreement upon default. Here the Debtor did not complete the payments of $1,000 per month as was intended under Article Eighth, nor did he pay $2,500 for Plaintiff's matrimonial counsel, all of which are non-dischargeable debts. The cost of collection of these non-dischargeable debts are therefor included as a debt that is non-dischargeable.

Pursuant to Article Fourth (d)(3) of the Separation Agreement, the Debtor obligated himself to pay the Plaintiff's Citibank Mastercard bill in the approximate sum of $2,800. The joint statement of facts indicates that $362 was paid to Citibank Mastercard. Consequently, $2,438 remains unpaid. The Court believes that the Debtor's assumption of the Plaintiff's debt to Citibank Mastercard was intended to free her of any third-party debt incurred during the marriage and was consistent with the intent to provide Plaintiff with the necessary support to meet her daily needs. As such, it is in the nature of alimony, maintenance and support and therefore non-dischargeable.

## CONCLUSION

In reviewing the entire record before this Court, it is this Court's conclusion that since the Plaintiff has acknowledged being paid $17,000 pursuant to Article Eighth that $19,000 remains to be paid to her on behalf of alimony, maintenance and support and is a non-dischargeable debt. In addition, the Plaintiff is entitled to a non-dischargeable debt of $2,500 representing her attorneys' fees in the matrimonial action and is entitled to the reasonable fees, costs and expenses for bringing this action. Plaintiff is also entitled to a non-dischargeable debt in the amount of $2,438 representing the balance to be paid on the Citibank Mastercard obligation. The Plaintiff makes no claim for any dental or doctor's fees, therefore the claim for these obligations is deemed withdrawn. The balance of the monies claimed as due to the Plaintiff is in the nature of a property settlement and is therefore dischargeable.

Settle Order in conformity with this decision.