**In re CIS CORPORATION, Continental Information Systems Corporation, et al., Debtors.**

**James P. HASSETT, as Chapter 11 Trustee of CIS Corporation, Continental Information Systems Corporation, et al., Plaintiffs,**

v.

**CITICORP NORTH AMERICA, INC., Defendant.**

**No. 95 Civ. 5563(CSH).**

United States District Court, S.D. New York.

Nov. 7, 1995.

Walter H. Curchack and Susan P. Johnston, Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, for James P. Hassett.

Michael E. Norton, King & Spalding, New York City, for Citicorp North America, Inc.

### MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

Citicorp North America, Inc. ("CNA") moves to withdraw the reference of an adversary proceeding to the bankruptcy court for the Southern District of New York. For reasons discussed below, the motion is denied.

## BACKGROUND

### The Dispute

CIS Corporation ("CIS") is in the business of marketing and managing computer equipment. CNA is a non-bank subsidiary of Citicorp, a bank holding company. On January 13, 1989, CIS and eleven of its affiliates (collectively the "Debtors") each filed petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 cases were assigned to Bankruptcy Judge Prudence B. Abram. On July 31, 1990, the Debtors' trustee in bankruptcy, James P. Hassett (the "Trustee"), commenced an adversary proceeding in bankruptcy court against CNA.

The issues presented in the adversary proceeding arise from a series of ten transactions between CNA and CIS occurring in December 1987. The position of the Trustee is that these transactions constituted financing by CNA of certain computer equipment which had been initially purchased by CIS and leased to third parties (the "Leases"). As part of the transactions, each Lease was assigned to CNA, which thereby became entitled to each quarterly lease payment. In connection with these transactions, CIS and CNA also entered into an agreement in which CIS was appointed as the exclusive agent to remarket the equipment upon expiration of each Lease (the "Remarketing Agreement"). Pursuant to the Remarketing Agreement, CIS received a fee from the proceeds of any subsequent sale or lease of the equipment.

CNA's position is that the transactions were sales transactions pursuant to which CIS sold the equipment to CNA. Therefore, rather than financing the equipment, CNA became the purchaser and legal titleholder to the equipment.

The complaint in the adversary proceeding states three causes of action against CNA. The First Claim seeks a declaratory judgment recharacterizing the transactions as financing transactions and declaring CIS the lawful owner of the equipment subject to the agreements. The Second Claim seeks a declaration that the Trustee may avoid, pursuant to 11 U.S.C. § 544, any unperfected security interest claimed by CNA in the equipment. The Third Claim seeks a declaration that the Trustee may use, sell, or lease the equipment pursuant to 11 U.S.C. § 363.

### Prior Proceedings

In May 1990, CNA filed a motion in the bankruptcy court for an order compelling the Trustee to assume or reject the Remarketing Agreement pursuant to 11 U.S.C. § 365(d)(2) with respect to certain of the equipment, and pursuant to that same section filed an order to show cause with respect to different equipment in February 1991. In February 1991 CNA also filed a motion in the district court to withdraw the reference of the adversary proceeding. In response to the motion to withdraw the reference, in April 1991 Judge Edelstein remanded the case to the bankruptcy court for an initial determination of the core/non-core nature of the proceeding.

In August 1991, after discovery was complete, the Trustee filed a motion for summary judgment before Judge Abram. Soon thereafter, CNA filed a cross-motion for summary judgment. Neither motion was decided, however, before Bankruptcy Judge Abram decided, in February 1992, that the recharacterization proceeding was core within the meaning of 28 U.S.C. § 157(b). CNA then immediately filed a proceeding in this Court, moving to withdraw the reference to bankruptcy court and to review Judge Abram's designation of the recharacterization proceeding as core. In September 1994, I held that the adversary proceeding was non-core and that CNA was entitled to a trial by jury of disputed issues of material fact with respect to the issue of title to the equipment. I denied CNA's motion to withdraw the case at that time, however, because I felt that judicial efficiency and uniformity would be promoted by allowing the bankruptcy court already familiar with the underlying action to manage the proceedings until the case became ready for trial, at which time removal to the district court would be required.

The parties then returned to the bankruptcy court for completion of pretrial proceedings. At a status conference on April 24, 1995, the parties agreed to resubmit their cross-motions for summary judgment, given the four-year hiatus since the motions had

originally been filed. The motions were re-submitted, and Judge Abram held a hearing on those motions on July 12, 1995.

Because the preparation for and the events that took place at the July 12 motions hearing are critical to CNA's motion to withdraw, I will discuss them in detail.

### Resubmission of the Summary Judgment Motions

In May 1995, CNA submitted the affidavit of Stephen T. Dixon, a principal Citicorp officer, and numerous background documents in support of its summary judgment motion. CNA also filed a statement of material facts pursuant to Local Bankruptcy Rule ("LBR") 13(h); this 13(h) filing was identical in all significant ways to a 13(h) statement filed by CNA in 1991 to accompany its original motion for summary judgment. The Trustee submitted, along with its May 1995 summary judgment motion, the 1991 affidavit of former employee Andrew Cvitanov, and its 1991 13(h) statement. The Trustee chose not to update these statements and affidavits because it believed that the underlying facts at issue were unchanged since 1991. Plaintiff's Mem. at 9. CNA then filed a new response to the Trustee's 13(h) statement; the Trustee did not file a response, but relied instead upon its 1991 response, having deemed CNA's new 13(h) statement to be virtually identical to its 1991 filing.

### The July 12 Hearing

The July 12, 1995 hearing before Judge Abram was dominated by an extended and contentious discussion of the propriety of Judge Abram's instructions to the parties to submit to her a joint statement of undisputed facts. Judge Abram repeatedly stated at the hearing that since the parties had cross-moved for summary judgment, it should be feasible for them to submit to her a joint 13(h) statement containing the facts not in dispute. Counsel for CNA objected to this instruction. Judge Abram specifically told counsel that "I am not asking you to agree on anything you don't agree on. I am asking that the parties sit down and try to agree...." Transcript of July 12, 1995 Motion Hearing before Judge Abram ("Tr.") at 16. When counsel for CNA asked "What happens if there is a disagreement as to what

the dispute is?" Judge Abram responded simply "You put it down." Tr. at 14. Recognizing the possibility of disagreement over the facts, Judge Abram told the parties to "put [the facts] on a single piece of paper and if there is one where you can't figure out how to write it and you disagree on how to write it, then if it is material, the motion should be denied." Tr. at 8.

Judge Abram's repeated statements to counsel were guided by her assessment that their dispute is essentially legal, not factual. Time and again she noted that

> I do not believe that there are any facts in dispute between the parties. I believe that what is in dispute between the parties is the legal effect of the way the agreements were written, and, so, I don't actually think that when it is done, there will turn out to be any problems with the facts....

Tr. at 19. Abram even asked counsel for CNA to tell her of any single fact presently disputed by the parties, and rejected counsel's proffered example as a legal question rather than a factual one. Tr. at 9–10. Nonetheless, counsel for CNA actively and repeatedly objected to the instructions from Judge Abram, arguing that they violated proper procedure for summary judgment motions. Counsel for CNA insisted that Judge Abram could not order the parties to submit a joint statement of fact, telling the judge "That can't be done. That is not the way summary judgment works." Tr. at 11. Counsel for CNA further insisted that Judge Abram was required to reject the Trustee's 13(h) statement as inadequate, and to accept CNA's 1995 13(h) filing as the undisputed statement of facts of record, since the Trustee had failed to resubmit a response to that recent statement. Tr. at 18.

Judge Abram refused to do any of this, however. She explicitly rejected CNA's assertion that the Trustee's 13(h) statement was deficient, stating instead that she merely found it unhelpful in its current form. Tr. at 15. Judge Abram next refused to simply deem admitted CNA's 13(h) statement because she felt that it "includes legal characterization, and as a consequence, they are not

findings of fact, they are conclusions of law." Tr. at 18. Finally, Judge Abram rejected CNA's assertion that its 13(h) statement was undisputed by the Trustee, because the Trustee *had* made a prior response to a nearly identical 13(h) in 1991. In short, Judge Abram denied CNA's demand that its 13(h) form be deemed uncontroverted and admitted

> on the grounds that there was a prior response to your statement and on the grounds that to the extent that your statement contains characterization, it is not a statement of facts as to which Rule 13(h) is governing and in addition to which ... I do not think the statement of facts with respect to this matter is one where the facts are in fact in dispute and that the parties' efforts to use words in the statement of facts which might be viewed as having legal connotation is, in fact, part of the problem here and that I am entitled to insist that the parties provide to me a statement of facts which is barren of legal conclusions because it is the legal conclusion that is at issue here.

Tr. at 20–21.

Dissatisfied with Judge Abram's instructions at the July 12, 1995 hearing, CNA has again filed a motion to withdraw before this Court, asking me to bring the case to trial in district court. Because I reject CNA's legal characterization of the events of July 12 hearing, I hold that none of Judge Abram's instructions constitute cause for withdrawal of the case from the bankruptcy court. I therefore deny CNA's motion to withdraw the action, and remand the case to the bankruptcy court for adjudication of the parties' cross-motions for summary judgment.

## DISCUSSION

### 1. Withdrawal Standards

■ Under 28 U.S.C. § 157(d), a district court may withdraw the referral of a case or proceeding to bankruptcy court "for cause shown." Section 157 does not define "cause." The Second Circuit recently interpreted the phrase in *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir.1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994). The Second Circuit listed numerous factors

that district courts should weigh in assessing whether there is cause to withdraw a case: "the core/non-core determination ..., questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Orion,* 4 F.3d at 1101. In applying these factors, district courts in this circuit have consistently held that § 157(d) should be construed narrowly, so that it does not provide an "escape hatch" out of bankruptcy court. *In re C-TC 9th Avenue Partnership,* 177 B.R. 760, 763 (N.D.N.Y.1995), *reconsid. denied,* 182 B.R. 1 (N.D.N.Y.1995), *quoting In re White Motor Corp.,* 42 B.R. 693, 704 (N.D.Ohio 1984); *In re Ionosphere Clubs, Inc.,* 103 B.R. 416, 419 (S.D.N.Y.1989); *In re Johns-Manville Corp.,* 63 B.R. 600, 603 (S.D.N.Y.1986). *See also In re CIS Corp.,* 172 B.R. 748, 753 (S.D.N.Y.1994) (Haight, J.).

■ CNA relies heavily upon the Second Circuit's statement in *Orion* that the fact that a case is non-core and thus subject to *de novo* review by the district court "could" lead the district court to conclude that efficiency would be maximized by withdrawal of the case for resolution in district court. Def's Mem. at 21, *quoting Orion,* 4 F.3d at 1101. Although this *Orion* language seems helpful to CNA, the argument would be far more compelling had I not already faced that very question when CNA's prior withdrawal motion was before this Court, and had I not held at that time that efficiency would be best served by remanding the case to Judge Abram until it was trial ready. *In re CIS Corp.,* 1994 WL 524987 at *3 (S.D.N.Y., Sept. 27, 1994). *See also In re CIS Corp.,* 172 B.R. 748, 763–64 (S.D.N.Y.1994) (Haight, J.) (making similar finding concerning the claims of a different defendant). The *Orion* Court recognized this eventuality as well, noting that a district court

> might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court.

4 F.3d at 1101–02. CNA must therefore convince this Court that, despite the considerations of efficiency that led me to remand this case the last time CNA requested withdrawal, Judge Abram's instructions requiring parties to generate a joint statement of facts rise to the level of cause to withdraw the reference.[1]

■ A second burden that weighs upon CNA's withdrawal motion is that CNA, by asking this Court to rule that Judge Abram's instructions constitute cause to withdraw the reference, is effectively seeking to appeal an interlocutory order. Judge Abram made this point herself in the following colloquy:

> **Judge Abram:** You cannot take an appeal from an order under which I am not denying or granting a motion for summary judgment. It is an interlocutory order which is not appealable.
>
> **Mr. Norton** [counsel for CNA]: First of all, this is a non-core case. So there wouldn't be any order entered in this court in any event. With all due respect, I wish to treat this as a finding on your part that Citicorp's motion for summary judgment has been denied.
>
> **Judge Abram:** You can't treat it as a finding because it is not such a finding and I have already ruled that it is not.

Trans. at 25.

[5] Under 28 U.S.C. § 158(a), a district court "shall have jurisdiction to hear appeals ..., with leave of the court, from interlocutory orders and decrees, of bankruptcy judges...." Two district courts in this circuit have addressed the question of whether this somewhat ambiguous provision requires the leave of the district court or the leave of the bankruptcy judge; both ruled that the provision required district court certification. *Abel v. Shugrue,* 179 B.R. 24, 28 (S.D.N.Y. 1995); *Gallant v. Kanterman,* 99 B.R. 208, 209 n. 2 (S.D.N.Y.1989), *aff'd* 108 B.R. 432 (S.D.N.Y.1989). Although other district courts have decided both ways on this question (*compare In re United Press Intern., Inc.,* 60 B.R. 265 (Bankr.D.Dist.Col.1986)

(leave of bankruptcy court is necessary to hear interlocutory challenges) *with In re Kroh Bros. Development Co.,* 101 B.R. 1000 (W.D.Mo.1989) (certification by bankruptcy court not required for interlocutory appeal) *and In re Lee Way Holding Co.,* 102 B.R. 616 (S.D.Ohio 1988) (same)), numerous circuit courts have held that § 158(a) does not require certification by bankruptcy courts, but rather leaves the matter fully to the discretion of the district courts. *See In re Bertoli,* 812 F.2d 136 (3rd Cir.1987) (certification by bankruptcy courts not required); *In re Morse Electric Co.,* 805 F.2d 262, 264 (7th Cir.1986) (district courts "may elect to hear interlocutory appeals"); *In re Ryther,* 799 F.2d 1412, 1414 (9th Cir.1986) (district court "may grant leave" to hear interlocutory appeals); *Temex Energy, Inc. v. Underwood,* 968 F.2d 1003 (10th Cir.1992) (interlocutory review available upon district court's certification). This Court is convinced by the logic of the circuit court decisions, and I hold that CNA's quasi-appeal is not, therefore, barred due to CNA's failure to receive leave to appeal from Judge Abram.

■ Nonetheless, although interlocutory appeal is possible under 158(a), it is not to be granted lightly. District courts should grant interlocutory appeals from bankruptcy judges only in "exceptional circumstances." *Ionosphere,* 179 B.R. at 28; *Escondido Mission Village v. Best Prods. Co., Inc.,* 137 B.R. 114, 116 (S.D.N.Y.1992); *In re Neshaminy Office Bldg. Associates,* 81 B.R. 301 (E.D.Pa. 1987); *Central Illinois Savings & Loan Ass'n v. Rittenberg Co. Ltd.,* 85 B.R. 473 (N.D.Ill.1988). I will therefore assess CNA's allegations that this Court has cause to withdraw the action through the lens of the additional requirement of the exceptional circumstances required for interlocutory review.

## 2. CNA's Contentions

### Adequacy of The Trustee's 13(h) Statement

CNA asserts that the Trustee's 13(h) statement is "legally inadequate to prevent the

---

1. CNA asserts that it is now ready for trial because summary judgment is no longer available to it. Def's Reply Mem. at 12. Because I reject this characterization of Judge Abram's instruc-

tions and the situation facing CNA, as discussed below, I once again order that the case stay in bankruptcy court until it is trial ready.

grant of summary judgment in favor of Citicorp." Def's Mem. at 14. This Court notes, however, that Judge Abram explicitly accepted the Trustee's 13(h) as adequate and sufficient, Tr. at 15, and I see no reason to disagree. The fact that Judge Abram then informed counsel for both sides that she needed the joint statement of facts from them because both 13(h) filings contained unhelpful legal characterizations does not undermine the underlying adequacy of the Trustee's 13(h) filing.

Having examined both parties' 13(h) statements, I accept Judge Abram's assessment that the 13(h) forms were formally sufficient but practically unhelpful. A perusal of the documents reveals that both include non-factual allegations which may have caused Judge Abram to dispute their usefulness to her. CNA's 13(h) statement includes, for example, the allegation that the parties' agreement "did not and could not" give CIS control over certain computer equipment. Def's 1995 13(h) statement at ¶ 16, attached to Johnston Affidavit as Exhibit J. The Trustee's 13(h) statement reveals similar characterizations of the facts: the trustee stated that CIS "purportedly sold" computer equipment to CNA, and that CNA "advanced" money for this deal. Plaintiff's 1991 13(h) statement at ¶¶ 4–5, attached to Johnston Affidavit as Exhibit C. These legal characterizations of the facts have no place in a 13(h) statement, as Judge Abram took pains to inform the parties.

Given these mutual flaws in the parties' 13(h) filings, alongside Judge Abram's approval of the underlying adequacy of the Trustee's 13(h) statement, I reject CNA's argument that the Trustee's 13(h) statement is inadequate and that Judge Abram's acceptance of the statement constitutes cause to withdraw the case from bankruptcy court.

*Is CNA's 13(h) Uncontroverted?*

CNA next argues vigorously that because the Trustee failed to respond to CNA's

1995 13(h) statement, Judge Abram should have deemed the facts in that filing uncontroverted and admitted. Def's Mem. at 19–20. While the language of LBR 13(h) could support that position, CNA's assertion tells only half the story. The Trustee informs the Court that it failed to respond to the 1995 13(h) statement only because it had already responded at length to CNA's 1991 13(h) statement in 1991, and, seeing no difference between the two statements, thought a second response would be redundant. Plaintiff's Mem. at 9–10.[2]

Local Bankruptcy Rule 13(h) states that "all material facts set forth in the statement ... will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Numerous cases in this circuit have interpreted this straight-forward provision, deeming facts admitted when no opposing papers are filed in response. *See DiCola v. SwissRe Holding (North America), Inc.,* 996 F.2d 30, 30–31 (2d Cir.1993) (interpreting identical language of Local Rule 3(g)); *Maresco v. Evans Chemetics,* 964 F.2d 106, 111 (2d Cir.1992) (same); *Naantaanbuu v. Abernathy,* 816 F.Supp. 218, 222 (S.D.N.Y.1993) (same); *International Mining Co. v. Allen & Co.,* 567 F.Supp. 777, 782 (S.D.N.Y.1983) (same).

Contrary to CNA's allegations, however, none of these cases shed light on the present situation, in which an opposing party failed to controvert a 13(h) statement solely because it had already controverted a nearly-identical prior 13(h) from a motion which was never resolved or withdrawn, but only later resubmitted. This is not a situation in which a party simply failed to respond an opposing party's factual allegations. Although the more cautious route might well have been for the Trustee to refile its objections, I can see no interest of justice that would be served by treating CNA's 13(h) as if it is undisputed. CNA has not been prejudiced by any objections sprung on it by surprise due to the Trustee's failure to refile its response papers,

2. At the April 1995 status conference before Judge Abram, there was no discussion between the parties about the question of whether new 13(h) statements or responses would be required with the resubmission of the summary judgment motions. Similarly, the parties' May 8, 1995 stipulation concerning the resubmission of the motions explicitly noted that parties should serve "any response or objection ... as such party may determine appropriate and in accord with all applicable rules." Parties' Stipulation attached to Def's Reply Mem. as exhibit C.

nor is Judge Abram any worse informed as to the facts in dispute between the parties. The Trustee's prior response to CNA strikes this Court as sufficient rebuttal to CNA's assertions in its 1995 13(h) filing.

*Judge Abram's Instructions Concerning A Joint Statement of Fact*

■ In its memoranda, CNA further argues that Judge Abram violated proper summary judgment procedures by requiring parties to generate a joint statement of facts in support of their cross-motions for summary judgment.

Federal Bankruptcy Rule 7056(c) and Fed. R.Civ.P. 56(c) plainly require judges to look to all available affidavits and evidence provided by the parties to ascertain whether a triable issue of fact exists. *See Bank of China v. Chan*, 937 F.2d 780 (2d Cir.1991). Normally this information is provided in the framework set out under Rule 56, with facts stated by one party and opposed by another. Nonetheless, no discovered case law holds or implies that requiring a joint statement of facts would violate Rules 7056(c) or 56(c).

To the contrary, the Court has discovered numerous cases, in this circuit and elsewhere, in which parties moving for summary judgment provided a court with a joint statement of fact. In one example, the bankruptcy judge stated in her opinion that the parties sought a ruling after having provided "a joint statement of facts pursuant to Rule 22(b) of the Local Rules of this Court." *In re Kaufman*, 115 B.R. 435, 437 (Bankr. E.D.N.Y.1990).[3] Since the language of Rule 22(b) is identical to the language of the New York Southern District's Local Bankruptcy Rule 13(h) with the exception of one sentence not relevant to this discussion, *Kaufman* stands as clear precedent that Judge Abram's instructions fit comfortably within the rubric of summary judgment procedure.

The Second Circuit has relied upon joint statement of facts as well. *See National*

*Railroad Passenger Corp. v. City of New York*, 882 F.2d 710, 712 (2d Cir.1989) (relying upon joint statement of facts in context of cross-motions for summary judgment); *Sears, Roebuck and Co. v. Brown*, 806 F.2d 399, 402 (2d Cir.1986) (same). *See also In re VIII South Michigan Associates*, 180 B.R. 202, 203 (Bankr.N.D.Ill.1995) (rejecting strict compliance with language of local bankruptcy rule in order to accept joint statement of facts presented by parties). To deem Judge Abram's instructions in violation of Local Bankruptcy Rule 13(h) would elevate a formalistic interpretation of rules over their substantive goals.

CNA cites only one case which speaks even somewhat to the question of whether Judge Abram's required procedure violates the standards of summary judgment review by excusing the judge from examining evidence. *Brown v. Crawford County, GA*, 960 F.2d 1002 (11th Cir.1992). In *Brown*, the Eleventh Circuit struck down a local Georgia "procedure" under which counsel had been prevented from filing summary judgment motions. 960 F.2d at 1007. The procedure required counsel to "advise the court and opposing counsel . . . if you desire to file such motion and your factual and legal reasons, *succinctly stated*, for believing you will prevail on the motion. . . . [T]he Court can suggest whether or not the case seems to be appropriate for summary judgment." *Id.* (emphasis in original). The trial judge in *Brown* had informed counsel that he did not believe that the case should be decided on motion for summary judgment. *Id.* at 1008. The Eleventh Circuit held that, since the clerk's office in the Middle District of Georgia would not accept summary judgment motions that had not been approved by the trial judge, this "procedure" acted to effectively preclude parties from filing summary judgment motions. *Id.* The Eleventh Circuit rejected such "advance screening" of sum-

---

**3.** Local Bankruptcy Rule 22(b) of the Eastern District of New York reads: "Upon any motion for summary judgment, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

mary judgment motions, stating that "Under Rule 56, a party *is entitled* to make a summary judgment motion, which the district court *then* may decide." *Id.* at 1009 (emphasis in original).[4]

The question before the Court is whether Judge Abram's procedural instructions created a similar screening mechanism, or rather served merely to assist her in managing her docket and the motions before her. CNA argues that Judge Abram created a screening mechanism with the "requirement that the parties *must agree and stipulate* to all material facts in order for summary judgment to be available to Citicorp." Def's Reply Mem. at 8 (emphasis in original).

This is not a fair or accurate description of Judge Abram's instructions. Judge Abram did not state that she would bar parties from bringing a summary judgment motion unless the parties stipulated to all facts, thus subjecting the ability to move for summary judgment to the "veto power" of the other party, as claimed by CNA. Def's Mem. at 19. Instead, Judge Abram stated simply that if the parties failed to agree on a factual matter *and* if she deemed that point to be material, then the motion should be denied. Judge Abram's instructions did not shut off the summary judgment opportunities of either party; they merely required the parties to meet the test of proving that there existed no genuinely disputed material facts. This is the very standard that is written into Fed. R.Civ.P. 56. I see nothing improper in Judge Abram's instructions; they do not unfairly screen out summary judgment motions, and the procedure she requested is very much in keeping with the goals of summary judgment practice.

### CONCLUSION

CNA has failed to demonstrate either cause for the withdrawal of the reference of this case to bankruptcy court or exceptional circumstances that justify granting leave to formally appeal Judge Abram's interlocutory order. Judge Abram's instruction that the

parties generate a joint statement of facts seems a fair and appropriate requirement in a case in which parties have cross-moved for summary judgment on the interpretation of undisputed contractual language. In addition, CNA's allegations that the Trustee failed to submit an adequate 13(h) statement or a response to their 1995 13(h) statement are unconvincing. CNA's motion to withdraw the reference of this case to bankruptcy court is hereby denied.

It is SO ORDERED.

---

4. The Eleventh Circuit then noted that other district courts in the circuit had adopted acceptable local rules governing the filing of summary judgment motions. *Id.* at 1009 n. 9. Since none of these rules include provisions that resemble Judge Abram's instructions, I do not discuss them here.